# Exhibit B

Constantine P. Economides (*pro hac vice forthcoming*)
(Florida Bar No. 118177)
Brianna K. Pierce (CA Bar No. 336906)
ROCHE FREEDMAN LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 851-5997
Email:  ceconomides@rochefreedman.com
        bpierce@rochefreedman.com

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| YUTING CHEN,<br><br>PLAINTIFF,<br><br>v.<br><br><br>ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive<br><br>DEFENDANTS. | Case No. 21-cv-09393-YGR |

**DECLARATION OF ABRAHAM ABITTAN**

I, Abraham Abittan, declare as follows:

    1.    I am a resident of Lawrence, New York.

    2.    I am Ariel Abittan's father.

    3.    I am a dermatologist licensed to practice medicine in the state of New York. I own a practice located in Woodmere, New York. I do not conduct any business or own any assets in California.

    4.    I have never interacted with a woman who introduced herself to me as Yuting Chen. I did, however, meet a woman who was engaged in a watch business with my son, Ariel Abittan ("Ariel"). This woman introduced herself to me as Tiffany Chen ("Tiffany"). I eventually learned that Tiffany used the name Lily Chao, but I always referred to her as Tiffany.

    5.    I first met Tiffany on December 10, 2017, at my son, Jacob Abittan's ("Jacob") wedding in Rye, New York. Tiffany's husband, who introduced himself to me as Damien, was the only person who accompanied Tiffany to the wedding.

    6.    While at the wedding, Tiffany, Damien, and I spoke for a brief period. We introduced ourselves. Tiffany and Damien congratulated me on Jacob's wedding and spoke highly of Ariel. We did not engage in a substantive conversation about Ariel, Tiffany, and Damien's business relationship. Nor did we discuss Tiffany's or Damien's finances or family backgrounds.

    7.    I met Tiffany on at least two other occasions in New York. Neither of those meetings were related to the watch business.

    8.    I saw Tiffany in March of 2019 when Tiffany flew to New York for a meeting with Ariel and investors in a cryptocurrency business, known at the time as Eian Labs Inc. ("Eian"). My wife and I also attended the meeting because the investors were family friends. At the meeting, Tiffany persuaded the investors to forego their rights to demand the return of their investments in Eian by presenting paperwork showing a huge incoming investment and a high valuation of Eian. At no point during the meeting did we discuss the watch business or luxury watches.

    9.    On or about May 13, 2019 and June 27, 2019, I flew to California to meet with Tiffany and Damien. At both meetings, we discussed the return of funds to investors in a

cryptocurrency business, known at the time as Eian Labs Inc. We also discussed a huge debt incurred by Tiffany, Damien, and their agents on Ariel's company, RealTime NY, LLC's credit card. Tiffany promised to pay off her debt, which she incurred on items such as a piano, school tuition, and lavish family vacations. I never offered to reimburse her for satisfying her own debt. Nor would there have been anything to reimburse, given that Tiffany never paid off the credit card.

10. Aside from these two meetings, which lasted a total of about two hours, I have had no other contact with Tiffany within the state of California. It is my understanding that Ariel and Tiffany did not purchase any watches together after our meeting.

11. I did not influence Tiffany's decision to conduct business with Ariel. Indeed, Tiffany had been engaged in a watch business with Ariel for more than a year before we were introduced at Jacob's wedding. And, by the time I met Tiffany in California, the business relationship between Ariel and Tiffany had already begun to deteriorate.

12. Other than being Ariel's father, I have no relationship to any luxury watch business, including the one related to Ariel, Tiffany, and Damien. I have never sold a luxury watch. I have never purchased a luxury watch. I have never received a luxury watch as a gift. I have never shared in the proceeds of a luxury watch sale or benefited from the sale of a luxury watch in any way.

13. I did not make an anonymous call to Tiffany (or anyone else) on December 23, 2020. I have never threatened Tiffany, her family, or her children. I did not (anonymously or otherwise) instruct Tiffany to "pay $4.5 million [to Ariel] within a few hours or suffer grave consequences." Compl. ¶64. To the contrary, it is my understanding that Tiffany, through counsel, **offered** to pay Ariel $4.5 million to settle their dispute related to the luxury watch and cryptocurrency businesses.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2022

Abraham Abittan