Constantine P. Economides (*pro hac vice*)
(Florida Bar No. 118177)
Brianna K. Pierce
(CA Bar No. 336906)
FREEDMAN NORMAND
FRIEDLAND LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel: (305) 971-5943
Email: ceconomides@fnf.law
        bpierce@fnf.law

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| YUTING CHEN,<br><br>    Plaintiff,<br><br>  v.<br><br>ARIEL ABITTAN, ABRAHAM ABITTAN, RACHEL ABITTAN, BRIAN ABITTAN, JACOB ABITTAN, ALYSSA ABITTAN, ELIANA ABITTAN, ROY GRABER, TOVA GRABER, REALTIME NY LLC, a New York Limited Liability Company, and DOES 1-20, inclusive.<br><br>    Defendants. | Case No. 21-CV-09393-NC<br><br>**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:  May 3, 2023<br>Time:  1:00 p.m.<br>Judge: Hon. Nathanael Cousins<br>Place:  Courtroom 5, 4th Floor |

1

**TO THE COURT AND TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

    PLEASE TAKE NOTICE that on, May 3, 2023, at 1:00 p.m. or as soon thereafter as the matter

3

may be heard in the courtroom of the Honorable Nathanael M. Cousins, located at the United States

4

District Court for the Northern District of California, 280 South First Street, 4th Floor, San Jose,

5

California 95113, Moving Defendants, Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob

6

Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber, Realtime NY LLC and Ariel

7

Abittan (collectively, "Defendants") will, and hereby does, move for an order granting judgment

8

on the pleadings and dismiss, with prejudice, the claims against the Moving Defendants.

9

Dated: March 24, 2023

*/s/ Constantine P. Economides*

10

Constantine P. Economides (*pro hac vice*)
Brianna K. Pierce (CBN 336906)

11

FREEDMAN NORMAND
FRIEDLAND LLP

12

1 SE Third Avenue, Suite 250
Miami, Florida 33131

13

Tel: (305) 971-5943
Email: ceconomides@fnf.law

14

          bpierce@fnf.law

15

*Counsel for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF ISSUE TO BE DECIDED ................................................................. 2

FACTUAL BACKGROUND ........................................................................................... 2

I.     ARIEL ABITTAN'S PARENTS: DEFENDANTS ABRAHAM ABITTAN AND
RACHEL ABITTAN ............................................................................................... 3

II.    ARIEL ABITTAN'S SIBLINGS: DEFENDANTS BRIAN ABITTAN, JACOB
ABITTAN, AND ALYSSA ABITTAN ..................................................................... 5

III.   ARIEL ABITTAN'S WIFE AND IN-LAWS: DEFENDANTS ELIANA
ABITTAN, ROY GRABER, AND TOVA GRABER ................................................ 6

IV.   DEFENDANT REALTIME NY, LLC .................................................................... 7

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT ................................................................................................................ 10

I.     THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING
DEFENDANTS ...................................................................................................... 11

       A.    The Individual Moving Defendants ..................................................... 12

       B.    RealTime NY, LLC ............................................................................ 13

II.    THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING
DEFENDANTS ...................................................................................................... 14

       A.    The Moving Defendants did not "purposefully avail" themselves of the
privilege of conducting relevant activities in California or "purposefully
direct" activities towards California ..................................................... 15

            1.    Roy and Tova Graber ................................................................. 17

            2.    Jacob, Brian, and Alyssa Abittan ............................................... 17

            3.    Abraham and Rachel Abittan ...................................................... 17

            4.    Elaina Abittan ............................................................................ 18

            5.    RealTime NY LLC ..................................................................... 18

1

2

B.  Plaintiff's claims do not "arise out of" the Moving Defendants' forum-related activities .......................................................................................... 19

C.  The exercise of jurisdiction over the Moving Defendants in California would be unreasonable ........................................................................................ 21

III.  THE JURISDICTIONAL DEFICIENCIES CANNOT BE CURED ............................... 22

CONCLUSION ................................................................................................................ 23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF AUTHORITIES</u>**

2

## **<u>CASES</u>**

3

4

*Alexandria Real Estate Equities, Inc. v. Runlabs (UK) Ltd.*,
   No. 18-CV- 07517-LHK, 2019 WL 4221590 (N.D. Cal. Sept. 5, 2019) ............................... 16

5

*Atkinson v. Meta Platforms, Inc.*,
   No. 20-17489, 2021 WL 5447022 (9th Cir. Nov. 22, 2021) ................................................... 22

6

7

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
   11 F.4th 972 (9th Cir. 2021) ................................................................................................... 10

8

9

*Benedith v. Case W. Rsrv. Univ.*,
   No. 17-CV-05896-JST, 2018 WL 659412 (N.D. Cal. Jan. 31, 2018) ..................................... 14

10

*Beverly Hills Reg'l Surgery v. Grp. Hospitalization & Med. Servs.*,
   No. CV 22-01217-RSWL-MRWx, 2022 WL 1909550 (C.D. Cal. June 3, 2022) ................. 19

11

12

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017).................................................................................................................. 13

13

14

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995) ..................................................................................................... 22

15

*Brand v. Menlove Dodge*,
   796 F.2d 1070 (9th Cir. 1986) ................................................................................................. 11

16

17

*Bungie, Inc. v. Thorpe*,
   No. 21-CV-05677-EMC, 2023 WL 2145522 (N.D. Cal. Feb. 21, 2023) ................................ 15

18

19

*Chavez v. Stellar Mgmt. Grp. VII, LLC*,
   No. 19-CV-01353-JCS, 2019 WL 2716292 (N.D. Cal. June 28, 2019).................................. 11

20

*Chubchai v. AbbVie, Inc.*,
   599 F. Supp. 3d 866 (N.D. Cal. 2022) ............................................................................... 14, 16

21

22

*Chung v. Chih-Mei*,
   No. 22-CV-01983-BLF, 2023 WL 2250288 (N.D. Cal. Feb. 27, 2023) ................................. 14

23

24

*Chung v. Chung, et al.*,
   No. 22-CV-01983-BLF, 2023 WL 2250288 (N.D. Cal. Feb. 27, 2023) .................... 11, 15, 19

25

*CollegeSource, Inc. v. AcademyOne, Inc.*,
   653 F.3d 1066 (9th Cir. 2011) ................................................................................................. 13

26

27

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ..................................................................................................... 9

28

---

*Eclipse Grp. LLP v. Target Corp.*,
No. 15cv1411-JLS-BLM, 2016 WL 8395077 (S.D. Cal. May 26, 2016) ................................. 9

*Elite Semiconductor, Inc. v. Anchor Smeiconductor, Inc.*,
No. 5:20-CV-06846-EJD, 2021 WL 3037701 (N.D. Cal. July 19, 2021) ....................... 11, 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ............................................................................................. 23

*Entrepreneur Media v. EYGN*,
No. SACV 08-0608 DOC (MLGx), 2008 WL 11338010 (C.D. Cal. Dec. 17,
2008) ..................................................................................................................................... 9

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) .......................................................................................... 15, 16

*Future Motion, Inc. v. JW Batteries LLC*,
No. 21-CV-06771-EMC, 2022 WL 1304102 (N.D. Cal. May 2, 2022)................................. 10

*Garcia v. Woldemichael*,
No. 21-CV-05079-DMR, 2022 WL 3590328 (N.D. Cal. Aug. 22, 2022)............................. 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)............................................................................................................. 11

*Gordon v. APM Terminals N. Am., Inc.*,
No. 17-CV-03970-MEJ, 2017 WL 3838092 (N.D. Cal. Sept. 1, 2017) ................................ 13

*Gregg v. Haw. Dep't of Pub. Safety*,
870 F.3d 833 (9th Cir. 2017) ................................................................................................. 8

*Hatset v. Century 21 Gold Coast Realty*,
649 F. App'x 400 (9th Cir. 2016) ......................................................................................... 19

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984).............................................................................................................. 18

*Hudson-munoz, LLC v. U.S. Waffle Co., Inc.*,
No. 2:19-cv-01960-ODW (RAO), 2019 WL 3548919 (C.D. Cal. Aug. 5, 2019) .................. 21

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) .............................................................................................. 19

*Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*,
No. 8:16-CV-01321-JLS-KES, 2017 WL 7240856 (C.D. Cal. Apr. 25, 2017) ..................... 11

*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022)................................ 9

*Jibreel v. Hock Seng Chin*,
No. C 13-03470 LB, 2014 WL 12600278 (N.D. Cal. Apr. 17, 2014),
*report and recommendation adopted*, No. 13-CV-03470-JST, 2014 WL
12617420 (N.D. Cal. May 5, 2014) ...................................................................................... 23

*Komaiko v. Baker Techs., Inc.*,
No. 19-CV-03795-DMR, 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020) .............................. 22

*Krantz v. Bloomberg L.P.*,
No. 221CV06275ABRAOX, 2022 WL 2102111 (C.D. Cal. Jan. 19, 2022).................... 11, 23

*Lamont v. Pilkington*,
No. 17-CV-5942-JSC, 2018 WL 2176100 (N.D. Cal. Apr. 23, 2018) ................................... 19

*LeGarie v. Nurse*,
No. 21-CV-04739-JCS, 2021 WL 5771144 (N.D. Cal. Dec. 6, 2021)................................... 22

*Lin v. Solta Med., Inc.*,
No. 21-CV-05062-PJH, 2022 WL 2222987 (N.D. Cal. June 21, 2022)................................. 21

*Marek v. Molson Coors Beverage Co.*,
580 F. Supp. 3d 848 (N.D. Cal. 2022) ................................................................................... 15

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ............................................................................................... 13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........................................................................................... 9, 13

*Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*,
No. 19CV1865-GPC(LL), 2020 WL 1433327 (S.D. Cal. Mar. 24, 2020) ............................ 18

*MGA Ent. v. Cabo Concepts*,
No. CV 20-10170 FMO (JPRx), 2021 WL 4733784 (C.D. Cal. June 7, 2021) ..................... 19

*Mocha Mill, Inc. v. Port of Mokha, Inc.*,
No. 18-cv-02539-HSG, 2019 WL 1048252 (N.D. Cal. Mar. 5, 2019)................................... 20

*Moledina v. Marriott Int'l, Inc.*,
No. 222CV03059SPGJPR, 2022 WL 16630276 (C.D. Cal. Oct. 17, 2022) ...................... 8, 14

*Monster Energy Co. v. Metro Giant, Inc.*,
No. EDCV202616JGBSHKX, 2021 WL 3524125 (C.D. Cal. Apr. 9, 2021) ........................ 21

*Nichols v. 360 Ins. Grp. LLC*,
No. 22-CV-03899-RS, 2023 WL 163201 (N.D. Cal. Jan. 11, 2023) ..................................... 16

*Page v. Broberg*,
No. 22-CV-06194-JSW, 2023 WL 105094 (N.D. Cal. Jan. 4, 2023)................................. 9, 11

*Parnell Pharms., Inc. v. Parnell, Inc.*,
  No. 5:14-CV-03158-EJD, 2015 WL 5728396 (N.D. Cal. Sept. 30, 2015) ............................ 10

*Pestmaster Franchise Network, Inc. v. Mata*,
  No. 16-cv-07268-EMC, 2017 WL 1956927 (N.D. Cal. May 11, 2017) .................... 13, 20, 21

*Peterson v. Kennedy*,
  771 F.2d 1244 (9th Cir. 1985) ........................................................................................... 19

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) ..................................................................................... 17, 20

*Prevail Legal, Inc. v. Gordon*,
  No. 20-CV-07173-BLF, 2021 WL 1947578 (N.D. Cal. May 14, 2021) ................................. 9

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................................... 15

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ........................................................................................... 10

*Soares v. Varner*,
  No. 21-CV-04526-VKD, 2022 WL 35611 (N.D. Cal. Jan. 4, 2022) .................................... 14

*Span Const. & Eng'g, Inc. v. Stephens*,
  No. CIVF 06-0286 AWIDLB, 2006 WL 1883391 (E.D. Cal. July 7, 2006) .......................... 12

*Stack v. Progressive Select Ins. Co.*,
  No. 20-cv-00338-LB, 2020 WL 5517300 (N.D. Cal. Sept. 14, 2020) ..................................... 9

*Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*,
  No. C 13-575 MMC, 2013 WL 2355446 (N.D. Cal. May 29, 2013) ..................................... 11

*United Fabrics Int'l v. Metro 22*,
  No. CV 14-6969 MRW, 2015 WL 12670376 (C.D. Cal. Mar. 6, 2015) ................................. 22

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................... 16, 17, 19

*Yamashita v. LG Chem, Ltd.*,
  No. 20-17512, 2023 WL 2374776 (9th Cir. Mar. 6, 2023) ..................................................... 9

*Zieger v. Wellpet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018) ................................................................................ 10

## <u>OTHER AUTHORITIES</u>

Fed. R. Civ. P. 12(c) ................................................................................................................. 8

1

**<u>INTRODUCTION</u>**

2      Plaintiff's false, conclusory allegations are not sufficient to establish personal jurisdiction

3  over Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana

4  Abittan, Roy Graber, Tova Graber, and RealTime NY LLC (collectively "Moving Defendants").

5  Plaintiff alleges that the Moving Defendants and Ariel Abittan (collectively "Defendants") learned

6  of Plaintiff's "financial status and lack of business sophistication and dubbed her as a prime target

7  for a calculated scheme to defraud Chen, and later her friends, for millions of dollars." [ECF No.

8  1] at ¶ 2.[1] She further claims that the Defendants "concocted countless fabricated stories…" which

9  "lured Chen into business dealings with Ariel Abittan…" *Id.* at ¶ 3–4. As a result, Plaintiff is now

10 seeking "recovery in this action for her tremendous financial losses resulting from her business

11 relationship with Ariel Abittan, induced and maintained with the assistance of the remining co-

12 conspirator defendants who are believed to have financially benefitted from the business

13 transactions, and mental/emotional anguish resulting from their deceitful and malicious conduct."

14 *Id.* at ¶ 5.

15     Critically, the Complaint lacks allegations showing that the Moving Defendants have any

16 contacts with the State of California. Moreover, each Moving Defendant has filed a ***sworn***

17 declaration indicating the lack of jurisdictional contacts with California and the attenuated contact

18 (if any contact) with Plaintiff. *See* Exs. A–I [ECF Nos. 37-1-37-9]. As established by this evidence,

19 Plaintiff cannot meet her burden to establish personal jurisdiction over the Moving Defendants. *See*

20 *id.*

21     In sum, the Court should grant judgment on the pleadings because it lacks personal

22 jurisdiction over the Moving Defendants. Additionally, no additional facts could be alleged in good

23 faith so as to establish relevant contacts between the Moving Defendants and California. Thus,

24 leave to amend would be futile, and the Court should dismiss the claims against the Moving

25 Defendants with prejudice.

26

27

28

---

[1] Citations to "¶" refer to the Complaint [ECF No. 1]. Unless otherwise noted, all emphasis has been added, and internal citations have been omitted.

DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS

CASE NO. 21-CV-09393-NC

1

**STATEMENT OF ISSUE TO BE DECIDED**

2      The Moving Defendants move the Court for a judgment on the pleadings, under Rule 12(c)

3  of the Federal Rules of Civil Procedure, for lack of personal jurisdiction.[2]

4

**FACTUAL BACKGROUND**

5      Plaintiff, Yuting Chen ("Plaintiff" or "Chen"), alleges claims arising from a business

6  venture through which Plaintiff and Defendants purportedly bought and resold luxury watches. ¶

7  24. In 2016, Ariel Abittan purportedly "responded to one of Chen's online listings for a particular

8  high-end watch" and began "convers[ing] with Chen's friend about the listing[.]" ¶ 29. Following

9  this initial contact, Plaintiff alleges that Ariel Abittan "form[ed] and maintain[ed] a regular business

10  relationship with Chen in connection with her watch business." ¶ 28.

11      Plaintiff further alleges that Ariel Abittan "quickly" discovered that Chen was "wealthy"

12  and that Chen had a "limited command in English, was an immigrant and lacked social experiences

13  and contacts outside her circle of family and friends in California." ¶ 32. According to Plaintiff,

14  Ariel Abittan and the Moving Defendants "[r]ealiz[ed] that Chen was a vulnerable target" and then

15  "bombard[ed]" Plaintiff with lies as part of a "broader scheme to convince Chen that doing business

16  with Ariel Abittan would bring access to some of the most elite business people in the country in

17  terms of his family members directly, and their personal multi-millionaire connections." ¶ 41.

18  Plaintiff claims that Ariel Abittan then took possession of a "large collection of highly valuable and

19  sought-after watches" worth millions of dollars, sold or retained the watches, and underpaid or

20  failed to pay Plaintiff her share of the profits. ¶¶ 47-52.

21      Notably, Plaintiff does not allege that the Moving Defendants were involved in Plaintiff's

22  and Ariel Abittan's joint watch business. Rather, Plaintiff makes only the following specific

23  allegations about each Moving Defendant's involvement in a purported "scheme" to convince

24  Plaintiff to do business with Ariel Abittan.

25

26

27

28
_____
[2] The Moving Defendants have not consented to personal jurisdiction and have preserved their rights and defenses under Rules 12(b)(2), 12(b)(3), 12(b)(6), and 12(b)(7). *See* ECF Nos. 32, 37.

### I.   ARIEL ABITTAN'S PARENTS: DEFENDANTS ABRAHAM ABITTAN AND RACHEL ABITTAN

Plaintiff makes claims against Abraham Abittan and Rachel Abittan—Ariel Abittan's parents—for Aiding and Abetting Breach of Fiduciary Duty, Fraud, Unjust Enrichment, Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil Conspiracy. In support of those claims, Plaintiff alleges that, in or around late 2019, Abraham Abittan and Rachel Abittan "flew to California in an attempt to further their fraudulent scheme on Chen and her friends. They asked Chen and her friends to continue to pay for Ariel Abittan's credit card debt and said that they would repay her. They did not." ¶ 60. The other allegations about Abraham Abittan and Rachel Abittan relate to conduct outside of California or individuals other than Plaintiff (such as Plaintiff's allegation that Abraham Abittan "lured" Plaintiff's "friend" into a $10,000 facial in New York). *See, e.g.*, ¶ 42.

In reality, Abraham Abittan is a resident of Lawrence, New York; is a dermatologist licensed to practice medicine in the state of New York; and owns a practice in Woodmere, New York. Ex. B, ¶ 1, 3. He does not conduct business or own any assets in California. *Id.* at ¶ 3. He has never interacted with a woman who introduced herself to him as Yuting Chen, but he did meet a woman who introduced herself as Tiffany Chen and who was engaged in a watch business with Ariel. *Id.* at ¶ 4. Abraham Abittan first met Tiffany Chen at Jacob Abittan's wedding. *Id.* at ¶ 5. While at the wedding, he did not engage in a substantive conversation about Ariel's and Tiffany Chen's business relationship. *Id.* at ¶ 6. Nor did they discuss Tiffany Chen's finances or family background. *Id.*

Abraham Abittan met Tiffany Chen on two other occasions in New York. *Id.* at ¶ 7. On or about May 13, 2019, and June 27, 2019, Abraham Abittan flew to California to meet with Tiffany Chen to discuss the return of funds to investors in a cryptocurrency business, known at the time as Eian Labs Inc. *Id.*at ¶ 9. They also discussed a huge debt incurred by Tiffany Chen, Damien Ding, and their agents on a credit card issued to Ariel's company, RealTime NY, LLC. *Id.* These two meetings lasted approximately two (2) hours total. *Id.* at ¶ 10. Abraham had no other contact with

3

Tiffany Chen aside from these two meetings. *Id*. He does not have any relationship to—and has not

benefitted in any way from—Tiffany Chen's and Ariel Abittan's watch business. *Id.* at ¶ 12.

Similarly, Rachel Abittan is a resident of Lawrence, New York. Ex. C, ¶ 1. She is an office

manager in Abraham Abittan's dermatologist's office and does not conduct any business or own

any assets in California. *Id.* at ¶ 3. She has never interacted with a woman who introduced herself

to her as Yuting Chen, but she did meet a woman who introduced herself as Tiffany Chen, who

was engaged in a watch business with Ariel. *Id.* at ¶ 4. She first met Tiffany at Jacob's wedding.

*Id.* at ¶ 5. While at the wedding, Rachel Abittan did not engage in a substantive conversation about

Ariel's and Tiffany's business relationship. *Id*. at ¶ 6. Nor did they discuss Tiffany's finances or

family background. *Id*. Rachel and Tiffany exchanged pleasantries via text message on rare

occasions, such as a happy birthday or thank you message. *Id*. at ¶ 7. Rachel met Tiffany a second

time in March of 2019 when Tiffany flew to New York for a meeting with Ariel and investors in a

cryptocurrency business, known as Eian Labs Inc. at the time. *Id*. at ¶ 8. They did not discuss the

watch business or luxury watches. *Id.*

The third and final time Rachel met Tiffany was on or about June 27, 2019, when Rachel

flew to California with her husband, Abraham. *Id.* at ¶ 9. They discussed the return of Eian Labs

Inc.'s investors' funds and a huge debt incurred by Tiffany, Damien, and their agents on a credit

card in the name of Ariel's company, RealTime NY, LLC. *Id*. The meeting lasted approximately

two (2) hours. *Id.* Rachel did not have any other contact with Tiffany in the State of California after

this meeting. *Id.* Tiffany was engaged in a business relationship with Ariel for over a year before

Rachel met her. *Id.* at ¶ 10.

Abraham Abittan and Rachel Abittan do not have any involvement in Plaintiff's and Ariel

Abittan's watch business. Ex. B, ¶ 12; C, ¶ 11. Abraham Abittan and Rachel Abittan have not

benefitted from the watch business. *Id.* They did not make an anonymous phone call to Plaintiff on

December 23, 2020. Ex. B, ¶ 13; C, ¶ 12. In sum, they have no connection to the claims made in

this lawsuit, and they lack jurisdictional contacts with California.

## II.   ARIEL ABITTAN'S SIBLINGS: DEFENDANTS BRIAN ABITTAN, JACOB ABITTAN, AND ALYSSA ABITTAN

Plaintiff makes claims against Brian Abittan, Jacob Abittan, and Rachel Abittan (the "Abittan Siblings")—Ariel Abittan's siblings—for Aiding and Abetting Breach of Fiduciary Duty, Fraud, Unjust Enrichment, Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil Conspiracy. In support of those claims, Plaintiff alleges that Brian Abittan and Jacob Abittan "represented to Chen and her friends that they were famous and well-connected lawyers." ¶ 40. Plaintiff alleges that Alyssa Abittan "represented to Chen and her friends that her husband was a wealthy businessman." *Id*. Plaintiff does not allege that any of these statements were made in California or made to Plaintiff while she was in California.

In reality, Brian Abittan is a resident of Lawrence, New York. Ex. D, ¶ 1. He met Plaintiff at Jacob Abittan's wedding. *Id.* at ¶ 6. He had a conversation with Plaintiff for approximately five (5) minutes, where he told her that he recently graduated medical school and was entering his residency program. *Id.* at ¶ 7. Brian's only trips to California were vacations about fifteen (15) years ago. *Id.* at ¶ 4.

Similarly, Jacob Abittan is a resident of Lawrence, New York. Ex. E, ¶ 1. He met Plaintiff during his wedding, which was the only time he ever met, spoke, saw, or interacted with Plaintiff in any way. *Id.* at ¶ 6. The conversation lasted for approximately one (1) minute, and only entailed a brief introduction and congratulations for Jacob's nuptials. *Id.* at ¶ 7. Jacob's first and only time to California was for a family vacation about fifteen (15) years ago. *Id.* at 4.

Like her brothers and parents, Alyssa Abittan is also a resident of Lawrence, New York. Ex. F, ¶ 1. She met Plaintiff at Jacob's wedding. *Id.* at ¶ 6. She had a one (1) minute conversation with Plaintiff which included a brief introduction, and then they parted ways. *Id.* at ¶ 7. Alyssa Abittan's first and only time to California was for a family vacation about fifteen (15) years ago. *Id.* at ¶ 4.

Moreover, the Abittan Siblings do not have any involvement in Plaintiff's and Ariel Abittan's watch business. Ex. D, ¶ 9; E, ¶ 10; F, ¶ 11. The Abittan Siblings have not benefitted

from the watch business. *Id.* The Abittan Siblings did not make an anonymous phone call to Plaintiff on December 23, 2020. Ex. D, ¶ 10; E, ¶ 11; F, ¶ 12.  In sum, the Abittan Siblings have no connection to the claims made in this lawsuit and no contacts with California.

### III.   ARIEL ABITTAN'S WIFE AND IN-LAWS: DEFENDANTS ELIANA ABITTAN, ROY GRABER, AND TOVA GRABER

Plaintiff makes claims against Eliana Abittan—Ariel Abittan's wife—and Roy Graber and Tova Graber—Ariel Abittan's in-laws—for Aiding and Abetting Breach of Fiduciary Duty, Fraud, Unjust Enrichment, Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil Conspiracy. In support of those claims, Plaintiff states: "Elaina Abittan together with her parents, Roy and Tova Graber, represented to Chen and her friends that they owned big real-estate development businesses and had developed properties over billions of dollars. They represented to Chen and her friends that they owned numerous premier properties and the famed department store Saks Fifth Avenue was their tenant." ¶ 40. Plaintiff does not allege that any of these statements were made in California or made to Plaintiff while she was in California.

In reality, Eliana Abittan is a resident of Lawrence, New York. Ex. G, ¶ 1. She is an office assistant, and she does not conduct any business or own any assets in California. *Id.* at ¶ 3. Eliana has never interacted with a woman who introduced herself to her as Yuting Chen. *Id.* at ¶ 4. At Jacob's wedding, Eliana met a woman who introduced herself as Tiffany Chen, who was engaged in a watch business with Ariel. *Id.* at ¶ 5.

In April of 2018, Eliana and her children stayed at Tiffany's house in California. *Id.* at 6. No business was conducted at this social visit. *Id.* After the visit, Ariel and Tiffany purchased only one watch together. *Id.* In July of 2018, Eliana began helping Ariel and Tiffany with payroll for their cryptocurrency business. *Id.* at ¶ 7. Her role had no relationship to the watch business. *Id.* She never told Tiffany or anyone else that she owned a big real-estate development business, that she developed properties over billions of dollars, that she owned numerous premier properties, or that Saks Fifth Avenue was her tenant. *Id.* at ¶ 8.

Roy Graber is a resident of Memphis, Tennessee. Ex. H, ¶ 1. He is the owner of GTS Technologies LLC, a computer support company formed under the laws of Tennessee with its

1   principal place of business located in Memphis, Tennessee. *Id.* at ¶ 3. He does not conduct any

2   business or own any assets in California. *Id.* He has never interacted with any person engaged in a

3   watch business with Ariel. *Id.* at ¶ 6. He has never interacted with a woman who introduced herself

4   to him as Yuting Chen. *Id.* at ¶ 5. He has never told anyone that he owns a big real-estate

5   development, that he developed properties over billions of dollars, that he owned numerous premier

6   properties, or that Saks Fifth Avenue was his tenant. *Id.* at ¶ 7. Roy Graber's first and only time

7   traveling to California was for a family vacation about twenty (20) years ago. *Id.* at ¶ 4.

8        Tova Graber is a resident of Memphis, Tennessee. Ex. I, ¶ 1. She is a retail store clerk, and

9   she does not conduct any business or own any assets in California. *Id.* at ¶ 3. She has never

10  interacted with any person engaged in a watch business with Ariel. *Id.* at ¶ 6. She has never

11  interacted with a woman who introduced herself to him as Yuting Chen. *Id.* at ¶ 5. She has never

12  told anyone that she owns a big real-estate development, that she developed properties over billions

13  of dollars, that she owned numerous premier properties, or that Saks Fifth Avenue was her tenant.

14  *Id.* at ¶ 7. Tova Graber's first and only time to California was for a family vacation about twenty

15  (20) years ago. *Id.* at ¶ 4.

16       Moreover, Eliana Abittan, Roy Graber, and Tova Graber do not have any involvement in

17  Plaintiff's and Ariel Abittan's watch business. Ex. F, ¶ 9; H, ¶ 8; I, ¶ 8. Aside from being married

18  to Ariel Abittan, Eliana Abittan has not directly benefitted from the watch business. Ex. E, ¶ 9. Roy

19  Graber and Tova Graber have not benefited from the watch business. Ex. H, ¶ 8; I, ¶ 8.  Eliana

20  Abittan, Roy Graber, and Tova Graber did not make an anonymous phone call to Plaintiff on

21  December 23, 2020. Ex. F, ¶ 12; H, ¶ 9; I, ¶ 9.  In sum, Eliana Abittan, Roy Graber, and Tova

22  Graber have no connection to the claims made in this lawsuit and no contacts with California.

23  **IV.    DEFENDANT REALTIME NY, LLC**

24       Plaintiff makes claims against RealTime NY, LLC for Fraud, Unjust Enrichment,

25  Imposition of Constructive Trust, Intentional Infliction of Emotional Distress, and Civil

26  Conspiracy. In support of those claims, Plaintiff alleges that Ariel Abittan used the business "in

27  transactions, sending and receiving funds using bank account in its name to defraud Chen." *Id*. at ¶

28

49. Plaintiff does not allege that RealTime conducts business in California or directs its activities into California. Nor does Plaintiff even allege that she conducted business with RealTime.

In reality, RealTime is a limited liability company formed under the laws of New York. Ex. A, ¶ 1. RealTime's principal place of business is, and always has been, in Lawrence, New York. *Id.* at ¶ 2. RealTime buys and sells ultra-luxury watches from and to people throughout the United States and the world. *Id.* at ¶ 5. RealTime primarily uses dealers located outside California and passive online platforms to conduct business. *Id.* RealTime does not purposefully direct its business into California over any other domestic or foreign jurisdiction. *Id.*

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Gregg v. Haw. Dep't of Pub. Safety*, 870 F.3d 833, 887 (9th Cir. 2017) (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). "This standard is 'functionally identical' to the standard for determining a motion to dismiss under Rule 12(b)(6)." *Moledina v. Marriott Int'l, Inc.*, No. 222CV03059SPGJPR, 2022 WL 16630276, at *1 (C.D. Cal. Oct. 17, 2022) (quoting *Gregg*, 870 F.3d at 887).

"Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review applies to motions brought under either rule.'" *Gregg*, 870 F.3d at 887 (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054n.4 (9th Cir. 2011)).

Similarly, when a defendant argues "lack of personal jurisdiction through a motion brought under Fed. R. Civ. P. 12(c) rather than 12(b)(2)," the same standard of review will apply, so long as a defendant preserved its jurisdictional defense. *Moledina*, 2022 WL 16630276, at *2  (finding that when "Defendant raised its objection to personal jurisdiction in its first responsive pleading," the "Defendant sufficiently preserved its jurisdictional defense pursuant to Rule 12(h) and is free to argue lack of personal jurisdiction in its Rule 12(c) motion at this stage in the proceeding."); *see also Entrepreneur Media v. EYGN*, No. SACV 08-0608 DOC (MLGx), 2008 WL 11338010, at *3

1  (C.D. Cal. Dec. 17, 2008) (applying Rule 12(b)(2) standard to a Rule 12(c) motion for judgment

2  on the pleadings for lack of personal jurisdiction).

3  　　　"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the

4  burden of demonstrating that the court has jurisdiction over the defendant." *Ji v. Naver Corp.*, No.

5  21-CV-05143-HSG, 2022 WL 4624898, at *2 (N.D. Cal. Sept. 30, 2022) (quoting *Pebble Beach*

6  *Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "[A] Rule 12(b)(2) challenge to personal

7  jurisdiction may attack the legal theory supporting jurisdiction based on the facts as pleaded (a

8  facial attack) or the facts themselves (a factual attack)." *Eclipse Grp. LLP v. Target Corp.*, No.

9  15cv1411-JLS-BLM, 2016 WL 8395077, at *7 (S.D. Cal. May 26, 2016). The Court "may consider,

10  declarations and other evidence outside the pleadings in determining whether it has personal

11  jurisdiction." *Stack v. Progressive Select Ins. Co.*, No. 20-cv-00338-LB, 2020 WL 5517300, at *4

12  (N.D. Cal. Sept. 14, 2020) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). The

13  Court "may not assume the truth of [the complaint's] allegations . . . which are contradicted by" a

14  declaration. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

15  Additionally, "the court need not assume the truth of mere **conclusory allegations**." *Page v.*

16  *Broberg*, No. 22-CV-06194-JSW, 2023 WL 105094, at *2 (N.D. Cal. Jan. 4, 2023).

17  "Uncontroverted allegations in the complaint are taken as true, but in the face of a contradictory

18  [declaration], the 'plaintiff cannot simply rest on the bare allegations of its complaint.'" *Yamashita*

19  *v. LG Chem, Ltd.*, No. 20-17512, 2023 WL 2374776, at *3 (9th Cir. Mar. 6, 2023) (quoting *Mavrix*

20  *Photo, Inc.*, 647 F.3d at 1223). "If . . . the defendant adduces evidence controverting the allegations,

21  the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal

22  jurisdiction,' for a court 'may not assume the truth of allegations in a pleading which are

23  contradicted by affidavit.'" *Prevail Legal, Inc. v. Gordon*, No. 20-CV-07173-BLF, 2021 WL

24  1947578, at *2 (N.D. Cal. May 14, 2021). "Additionally, conclusory allegations or 'formulaic

25  recitation of the elements' of a claim are not entitled to the presumption of truth." *Id.* (quoting

26  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). "'Nor is the court required to accept as true allegations

27  that are ... unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead*

28  *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

1

**ARGUMENT**

2      Plaintiff cannot establish personal jurisdiction over the Moving Defendants in California.

3  "'Where … no federal statute authorizes personal jurisdiction, the district court applies the law of

4  the state in which the court sits. California's long-arm statute is coextensive with federal due

5  process requirements, [so] the jurisdictional analyses under state law and federal due process are

6  the same.'" *Future Motion, Inc. v. JW Batteries LLC*, No. 21-CV-06771-EMC, 2022 WL 1304102,

7  at *4 (N.D. Cal. May 2, 2022) (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066

8  (9th Cir. 2011)). "A district court's exercise of jurisdiction over a nonresident defendant comports

9  with due process when the defendant has at least 'minimum contacts' with the forum and subjecting

10  the defendant to an action in that forum would 'not offend traditional notions of fair play and

11  substantial justice.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (quoting

12  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Applying the "minimum contacts"

13  analysis, "[p]ersonal jurisdiction may be either general or specific." *Garcia v. Woldemichael*, No.

14  21-CV-05079-DMR, 2022 WL 3590328, at *2 (N.D. Cal. Aug. 22, 2022) (citing *Bristol-Myers*

15  *Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017)).

16      Additionally, "personal jurisdiction must be established as to each individual defendant."

17  *Parnell Pharms., Inc. v. Parnell, Inc.*, No. 5:14-CV-03158-EJD, 2015 WL 5728396, at *4 (N.D.

18  Cal. Sept. 30, 2015). Where a party makes jurisdictional arguments generally against all or multiple

19  defendants together, such allegations are insufficient to establish jurisdiction over any individual

20  party. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) ("[J]urisdiction depends only upon

21  each defendant's relationship with the forum. Regardless of their joint liability, jurisdiction over

22  each defendant must be established individually."); *Zieger v. Wellpet LLC*, 304 F. Supp. 3d 837,

23  848-49 (N.D. Cal. 2018) ("Plaintiffs must make a prima facie showing of jurisdictional facts giving

24  rise to specific jurisdiction over each defendant separately."). The requirement to plead individually

25  exists even if a plaintiff may be asserting joint liability, as liability is a wholly separate and

26  unrelated inquiry from jurisdiction. *Parnell Pharms., Inc.*, 2015 WL 5728396, at *4 ("Liability

27  depends on the relationship between the plaintiff and the defendants and between the individual

28  defendants; jurisdiction depends only upon each defendant's relationship with the forum.").

"[C]ourts within this circuit routinely reject the use of a 'single enterprise' theory as a basis to establish personal jurisdiction." *Krantz v. Bloomberg L.P.*, No. 221CV06275ABRAOX, 2022 WL 2102111, at *5 (C.D. Cal. Jan. 19, 2022) (quoting *Campanelli v. Image First Unif. Rental Serv., Inc.*, No. 15-CV-04456-PJH, 2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016) (holding that "'single enterprise' and 'joint employer' theories are bases for liability, not tests for personal jurisdiction.")); *Iconlab Inc. v. Valeant Pharms. Int'l, Inc.*, No. 8:16-CV-01321-JLS-KES, 2017 WL 7240856, at *6 (C.D. Cal. Apr. 25, 2017) ("Plaintiffs' other, exotic theories of imputing contacts—"single enterprise," "aiding and abetting," and "ratification"—are not valid theories of establishing personal jurisdiction in the Ninth Circuit to the extent that they stray from the well-established alter ego and agency theories)).

## I.     THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING DEFENDANTS

"General personal jurisdiction, which enables a court to hear cases unrelated to the defendant's forum activities, exists if the defendant has 'substantial' or 'continuous and systematic' contacts with the forum state." *Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C 13-575 MMC, 2013 WL 2355446, at *3 (N.D. Cal. May 29, 2013) (quoting *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)). "The standard for establishing general jurisdiction is 'fairly high.'" *Chavez v. Stellar Mgmt. Grp. VII, LLC*, No. 19-CV-01353-JCS, 2019 WL 2716292, at *5 (N.D. Cal. June 28, 2019) (citing *Menlove Dodge*, 796 F.2d at 1073) ("Our cases demonstrate that 'substantial' is intended to be a fairly high standard."). "General personal jurisdiction exists when the defendant's contacts 'are so continuous and systematic as to render [it] essentially at home in the forum state." *Chung v. Chung, et al.*, No. 22-CV-01983-BLF, 2023 WL 2250288, at *2 (N.D. Cal. Feb. 27, 2023) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "The 'paradigm' for general jurisdiction over an individual is 'the individual's domicile.'" *Page*, 2023 WL 105094, at *2 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). "An individual's frequent **visits** to a forum, or even his owning property in a forum, do not, alone, justify the exercise of general jurisdiction over him," *Elite Semiconductor, Inc. v. Anchor Smeiconductor, Inc.*, No. 5:20-CV-06846-EJD, 2021 WL 3037701, at *7 (N.D. Cal. July 19, 2021).

### A.    The Individual Moving Defendants[3]

None of the Individual Moving Defendants have had "substantial" or "continuous and systematic" contacts with California that would justify rendering them "at home" in California. Abraham, Rachel, Brian, Jacob, Alyssa, and Eliana are all individuals residing in Lawrence, New York. ¶ 8-13. Roy and Tova are individuals residing in Memphis, Tennessee. *Id*. at ¶ 14-15. Brian, Jacob, Alyssa, Roy, and Tova's last contact with California was over fifteen (15) years ago, and that contact was for the purpose of a vacation. *See* Exs. D, ¶ 4; E, ¶ 4; F, ¶ 4; H, ¶ 4; I, ¶ 4. Eliana made one social visit to Plaintiff's residence in California, where she was accompanied by her children, and no business was conducted. Ex. G, ¶ 6.  Thus, each defendant's *single visit* with California cannot justify the exercise of general jurisdiction. *See Elite Semiconductor*, 2021 WL 3037701, at *7 (holding that "frequent visits to a forum … do not, alone, justify the exercise of general jurisdiction[.]).

Similarly, Abraham and Rachel have spent approximately twenty-four hours in California in the last fifteen (15) years, with only two (2) of those hours meeting the Plaintiff regarding a separate business. Exs. B, ¶ 10; C, ¶ 9.[4] This meeting occurred after Ariel and Plaintiff had already stopped transacting in their watch business together. *Id.* Two (2) hours of contact with the Plaintiff in California does not justify general jurisdiction over Abraham and Rachel. *See Span Const. & Eng'g, Inc. v. Stephens*, No. CIVF 06-0286 AWIDLB, 2006 WL 1883391, at *5 (E.D. Cal. July 7, 2006) (no general jurisdiction when "… Defendant was in California for work purposes between seven and fourteen days each year; Defendant communicated at least once a week with his supervisor who was in California; Defendant communicated at least once a day with his administrative

---

[3] The "Individual Moving Defendants" are Abraham Abittan, Rachel Abittan, Brian Abittan, Jacob Abittan, Alyssa Abittan, Eliana Abittan, Roy Graber, Tova Graber.

[4] Plaintiff has repeatedly claimed that this case about the watch business is factually distinct from the litigation related to the blockchain business. *See* ECF Nos. 55, 66. Even assuming, arguendo, that Abraham and Rachel did travel to California and met with Plaintiff for two (2) hours regarding this matter, that contact alone would not support an exercise of general jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (even when "[Defendant] has travelled to [forum state] on numerous occasions… frequently visits [forum state] for recreation, and … [Defendant'] has transacted a great deal of business in [forum state] …, [Defendant]'s frequent journeys into [forum state] for personal and recreational purposes would not by themselves constitute the level of contact which must exist for general jurisdiction to lie.)

1    assistant who was in California …"). These limited contacts cannot subject Abraham, Rachel,

2    Brian, Jacob, Alyssa, Eliana, Roy, or Tova to general jurisdiction in California.

3        **B.    RealTime NY, LLC**

4        The "paradigm forums" for the exercise of general jurisdiction over a corporation are "the

5    corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*,

6    581 U.S. 402, 413 (2017). General jurisdiction outside of those forums is available "[o]nly in an

7    exceptional case," *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), where the

8    defendant's contacts are so "continuous and systematic" as to "'approximate physical presence' in

9    the forum state." *Pestmaster Franchise Network, Inc. v. Mata*, No. 16-cv-07268-EMC, 2017 WL

10   1956927, at *2 (N.D. Cal. May 11, 2017) (Chen, J.) (quoting *Mavrix Photo, Inc.*, 647 F.3d at 1223-

11   24). "'The standard for general jurisdiction is an exacting standard, as it should be, because a

12   finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer

13   for any of its activities anywhere in the world.'" *Gordon v. APM Terminals N. Am., Inc.*, No. 17-

14   CV-03970-MEJ, 2017 WL 3838092, at *5 (N.D. Cal. Sept. 1, 2017) (quoting *CollegeSource, Inc.*,

15   653 F.3d at 1074). Where a defendant business is not incorporated in the forum state and does not

16   maintain its principal place of business there, it must be "so heavily engaged in activity in [forum

17   state] 'as to render [it] essentially at home' in that State." *BNSF*, 137 S. Ct. at 1559 (quoting

18   *Daimler*, 571 U.S. at 127, 134). A defendant business's contacts will "fall well short of the requisite

19   showing for general jurisdiction" when it "has no offices or staff in California, is not registered to

20   do business in the state, has no registered agent for service of process, and pays no state [income]

21   taxes." *Mavrix Photo*, 647 F.3d at 1225; *CollegeSource*, 653 F.3d at 1074.

22       Under those standards, RealTime NY LCC is not subject to general jurisdiction in

23   California. RealTime NY LLC is formed under the laws of New York, and its principal place of

24   business is in Lawrence, New York. Ex. A, ¶¶ 1–2. It has no offices or staff in California, is not

25   registered to do business in the state, has no registered agent for service of process, and pays no

26   state income taxes. *See Mavrix Photo*, 647 F.3d at 1225; *CollegeSource*, 653 F.3d at 1074

27   ("[Plaintiff] has not satisfied the 'exacting' standard necessary to establish general jurisdiction.

28   [Defendant business] has no offices or staff in California; is not registered to do business in the

1   state; has no registered agent for service of process; and pays no state taxes."). Thus, RealTime NY

2   LLC's contacts with California fall short of the requisite showing for general jurisdiction.

3   **II.   THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING
        DEFENDANTS**

4

5   "Specific jurisdiction exists when the plaintiff's claims or causes of action 'arise out of or

6   relate to' the defendant's contacts with the forum state." *Moledina*, 2022 WL 16630276, at *2.

7   "Although a nonresident's physical presence within the territorial jurisdiction of the court is not

8   required, the nonresident generally must have 'certain minimum contacts … such that the

9   maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

10  *Chung v. Chih-Mei*, No. 22-CV-01983-BLF, 2023 WL 2250288, at *2 (N.D. Cal. Feb. 27, 2023)

11  (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). For there to be "minimum contacts" that

12  allow a State to assert specific jurisdiction over a nonresident defendant consistent with Due

13  Process, "the defendant's suit-related conduct must create a *substantial* connection with the forum

14  State." *Chubchai v. AbbVie, Inc.*, 599 F. Supp. 3d 866, 872 (N.D. Cal. 2022) (quoting *Walden*, 571

15  U.S. at 284) (emphasis added). "The inquiry whether a forum State may assert specific jurisdiction

16  over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the

17  litigation.'" *Soares v. Varner*, No. 21-CV-04526-VKD, 2022 WL 35611, at *3 (N.D. Cal. Jan. 4,

18  2022) (quoting *Walden*, 571 U.S. at 283–84). "[T]he relationship between the nonresident

19  defendant, the forum, and the litigation 'must arise out of contacts that the *defendant himself* creates

20  with the forum State.'" *Id.* (quoting *Walden*, 571 U.S. at 284).

21  The "[u]nilateral activity of another party or a third person is not an appropriate

22  consideration when determining whether a defendant has sufficient contacts with a forum State to

23  justify an assertion of jurisdiction." *Benedith v. Case W. Rsrv. Univ.*, No. 17-CV-05896-JST, 2018

24  WL 659412, at *2 (N.D. Cal. Jan. 31, 2018) (quoting *Helicopteros Nacionales de Colombia, S.A.

25  v. Hall*, 466 U.S. 408, 417 (1984)). Additionally, "the minimum contacts analysis examines 'the

26  defendant's contacts with the forum State itself, not the defendant's contacts with persons who

27  reside there.'" *Soares*, 2022 WL 35611, at *3 (quoting *Walden*, 571 U.S. at 285). "[D]efendant's

28  conduct that must form the necessary connection with the forum State that is the basis for its

1  jurisdiction over him." *Id.* at *4. Due process does not allow a defendant "be haled into court 'based

2  on the random, fortuitous, or attenuated contacts he makes by interacting with other persons

3  affiliated with the State.'" *Bungie, Inc. v. Thorpe*, No. 21-CV-05677-EMC, 2023 WL 2145522, at

4  *6 (N.D. Cal. Feb. 21, 2023) (quoting *Walden*, 571 U.S. at 286).

5          The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the non-

6  resident defendant must "purposefully direct" his activities towards California or a resident thereof,

7  or perform an act which "purposefully avails" him of the privilege of conducting activities in

8  California; (2) the plaintiff's claims "arise out of" those forum-related activities; and (3) the

9  exercise of jurisdiction is "reasonable." *See Chung v. Chung, et al.*, No. 22-CV-01983-BLF, 2023

10  WL 2250288, at *3 (N.D. Cal. Feb. 27, 2023) (citing *Schwarzenegger v. Fred Martin Motor Co.*,

11  374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden on proving the first two prongs."

12  *Id.* If plaintiff does so, "the burden then shifts to the defendant to present a compelling case that the

13  exercise of jurisdiction would not be reasonable." *Id.* Plaintiff cannot meet this burden.

14          **A.      The Moving Defendants did not "purposefully avail" themselves of the**
15  **privilege of conducting relevant activities in California or "purposefully**
    **direct" activities towards California**

16

17          "The first prong of [the specific jurisdiction] test may be satisfied by 'purposeful availment

18  of the privilege of doing business in the forum; by purposeful direction of activities at the forum;

19  or by some combination thereof.'" *Marek v. Molson Coors Beverage Co.*, 580 F. Supp. 3d 848, 854

20  (N.D. Cal. 2022) (quoting *Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433

21  F.3d 1199, 1206 (9th Cir. 2006)). The "[plaintiff] must show either purposeful availment or

22  purposeful direction by [defendant]." *Chung*, 2023 WL 2250288, at *3. "[A] showing that a

23  defendant purposefully availed himself of the privilege of doing business in a forum state typically

24  consists of evidence of the defendant's actions *in* the forum, such as executing or performing a

25  contract there." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 605 (9th Cir.

26  2018) (quoting *Schwarzenegger*, 374 F.3d at 802). "By contrast, '[a] showing that a defendant

27  purposefully directed his conduct toward a forum state … usually consists of evidence of the

28  defendant's actions *outside* the forum state that are directed at the forum, such as the distribution

1   in the forum state of goods originating elsewhere.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 803).

2   "[A] purposeful availment analysis is 'most often used in suits sounding in contract,' whereas a

3   purposeful direction analysis is 'most often used in suits sounding in tort.'" *Id.* (quoting

4   *Schwarzenegger*, 374 F.3d at 802).

5          Purposeful direction occurs only where a defendant "(1) committed an intentional act, (2)

6   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

7   suffered in the forum state." *Nichols v. 360 Ins. Grp. LLC*, No. 22-CV-03899-RS, 2023 WL

8   163201, at *3 (N.D. Cal. Jan. 11, 2023) (citing *Schwarzenegger*, 374 F.3d at 803). "Failing to

9   sufficiently plead any one of these three elements … is fatal to Plaintiff[s'] attempt to show personal

10  jurisdiction." *Alexandria Real Estate Equities, Inc. v. Runlabs (UK) Ltd.*, No. 18-CV- 07517-LHK,

11  2019 WL 4221590, at *7 (N.D. Cal. Sept. 5, 2019) (internal quotations omitted). When determining

12  whether an intentional act was expressly aimed at the forum state, courts must only review "the

13  defendant's suit-related conduct[.]" *See Chubchai*, 599 F. Supp. 3d at 872 (quoting *Walden*, 571

14  U.S. at 284). The "'minimum contacts' analysis looks to the defendant's contacts with the forum

15  State itself, not the defendant's contacts with persons who reside there." *Bungie*, 2023 WL 2145522

16  at *5 (quoting *Walden*, 571 U.S. at 285). In other words, "[t]he plaintiff cannot be the only link

17  between the defendant and the forum; rather, the defendant's conduct must form the necessary

18  connection with the forum in order to establish jurisdiction…" *Chubchai*, 599 F. Supp. 3d at 872

19  (citing *Walden*, 571 U.S. at 285).

20         Here, there are no facts to support the position that the Moving Defendants purposefully

21  availed themselves of the privilege of doing business in California or purposefully directed their

22  activities towards California. Beyond conclusory allegations that the Moving Defendants made

23  representations as a broad scheme to convince Chen to do business with Ariel—allegations that the

24  Moving Defendants' sworn declarations expose as baseless—Plaintiff does not provide any facts

25  that show each individual defendant purposefully directed himself or herself to California. The only

26  contacts that the Moving Defendants have with California stem from family vacations from over

27  fifteen (15) years ago or short visits with Plaintiff on an unrelated matter. *See* Exs. A-I.

28

1          1.      Roy and Tova Graber

2          Roy and Tova have never met Yuting Chen, nor have they ever interacted with anyone that

3    has engaged in a watch business with their son-in-law, Ariel. Exs. H, ¶ 5–6; I, ¶ 5–6. The last time

4    they were in California was over twenty (20) years ago, when they traveled there for family

5    vacation. Exs. H, ¶ 4; I, ¶ 4. The mere allegation that they "represented to Chen and her friends that

6    they owned big real-estate development business and had developed properties over billions of

7    dollars," or that "they owned numerous premier properties and the famed department store Saks

8    Fifth Avenue was their tenant," without any additional facts detailing the date, time, or place these

9    representations took place, is insufficient to establish purposeful direction. *See Sher v. Johnson*,

10   911 F.2d 1357, 1365 (9th Cir. 1990) (Where a party makes jurisdictional arguments generally

11   against all or multiple Defendants together, such allegations are insufficient to establish jurisdiction

12   over any individual party.).

13         2.      Jacob, Brian, and Alyssa Abittan

14         Jacob, Brian, and Alyssa have only traveled to California for vacation once, over fifteen

15   (15) years ago. *See* Exs. D ¶ 4, E ¶ 4, F ¶ 4. The first and only time they met Plaintiff was at Jacob's

16   wedding in Rye, New York on December 10, 2017. *See* Exs. D ¶ 6, E ¶ 6, F ¶ 6. Each had a brief

17   conversation lasting approximately five minutes or less. *See* Exs. D ¶ 7, E ¶ 7, F ¶ 7. Those

18   attenuated, fortuitous introductions at Jacob's wedding do not constitute the minimum contacts due

19   process requires. *See Walden*, 571 U.S. at 285–86 ("[T]he plaintiff cannot be the only link between

20   the defendant and the forum. . . . Due process requires that a defendant be haled into court in a

21   forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

22   attenuated' contacts he makes by interacting with other persons affiliated with the State.").

23         3.      Abraham and Rachel Abittan

24         "While 'physical entry into the State … is certainly a relevant contact," a defendant's

25   transitory presence will support jurisdiction only if it was meaningful enough to 'create a substantial

26   connection with the forum State." *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (finding

27   "[defendant]'s two trips to California did not create sufficient minimum contacts to subject him to

28   personal jurisdiction there."); *Medimpact Healthcare Sys., Inc. v. IQVIA Holdings Inc.*, No.

1    19CV1865-GPC(LL), 2020 WL 1433327, at *12 (S.D. Cal. Mar. 24, 2020) (granting defendant's

2    motion to dismiss where defendant "visited [California] once to meet with [Plaintiff]… The visit

3    lasted two days and they discussed [business] … [Defendant] admits he visited California one other

4    time after 2013 that was entirely personal in nature…").

5        Abraham's two trips and Rachel's sole trip to California cannot establish that he or she

6    purposefully directed conduct towards California. Because those trips focused on the blockchain

7    business and occurred **after** Ariel and his business partner stopped transacting in their watch

8    business together, the trips did not create sufficient minimum contacts for specific personal

9    jurisdiction. Ex. B, ¶ 10–11; Ex. C, ¶ 9–10.

10                   4.    <u>Elaina Abittan</u>

11        Similarly, Eliana's one visit, with her children, to Plaintiff's California home, during which

12    no business was conducted, is not enough to create sufficient minimum contacts to subject her to

13    personal jurisdiction. *See Medimpact Healthcare Sys., Inc*., 2020 WL 1433327 at *12 (defendant's

14    two trips to California, one business trip and one personal trip where no business was conducted,

15    was not sufficient for personal jurisdiction, even when defendant "sent mail…, sent emails…, and

16    conducted phone calls" with California residents).

17                   5.    <u>RealTime NY LLC</u>

18        The only potential jurisdictional allegation is that RealTime NY LLC sent funds to

19    California and received funds from California. Those allegations are insufficient to confer personal

20    jurisdiction. *See Helicopteros*, 466 U.S. at 417 ("purchases and related trips, standing alone, are not

21    a sufficient basis for a State's assertion of jurisdiction").

22                        *      *      *

23

24

25

26

27

28

1       In sum, the Complaint lacks allegations showing purposeful availment or direction by any

2 Moving Defendant.[5] Even if there were such allegations, moreover, there are no allegations

3 showing how those activities gave rise to Plaintiff's claims.

4      **B.**    **Plaintiff's claims do not "arise out of" the Moving Defendants' forum-related**

5           **activities**

6       "Under the second prong, in determining whether a plaintiff's claim arises out of or relates

7 to the defendant's forum-related activities, 'the Ninth Circuit' follows the 'but for' test." *Chung*,

8 2023 WL 2250288, at *3 (quoting *Menekn v. Emm*, 503 F.3d 1050 (9th Cir. 2007)). Thus, a plaintiff

9 "must show that she would not have suffered an injury 'but for' [defendant]'s California-related

10 conduct." *Id*.

11       "[A] defendant's general connections with the forum are not enough." *MGA Ent. v. Cabo*

12 *Concepts*, No. CV 20-10170 FMO (JPRx), 2021 WL 4733784, at *2 (C.D. Cal. June 7, 2021)

13 (Olguin, J.) (quoting *Bristol-Myers Squibb v. Superior Ct. of California*, 137 S. Ct. 1773, 1781

14 (2017)). If the alleged injury would have been suffered irrespective of defendant's alleged contacts

15 ────────────────

16 [5] Additionally, purposeful direction or availment cannot be established through generalized, fact-deficient allegations that co-defendant family members made representations collectively through various in person and telephonic/video "family" meetings. *See* ¶ 97; *see also Beverly Hills Reg'l Surgery v. Grp. Hospitalization & Med. Servs*., No. CV 22-01217-RSWL-MRWx, 2022 WL 1909550, at *5 (C.D. Cal. June 3, 2022) (Lew, J.) ("The alleged representations made by Defendant over the phone are also insufficient" to establish personal jurisdiction); *Hatset v. Century 21 Gold Coast Realty*, 649 F. App'x 400, 402 (9th Cir. 2016) ("[Defendant] communicated with [Plaintiff] while [Plaintiff] was physically present in California, but these communications connect only [Defendant] to [Plaintiff], not to California specifically."); *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("'[O]rdinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state.'"); *Hunt v. Erie Ins. Grp*., 728 F.2d 1244, 1248 (9th Cir. 1984) ("The mere fact that [defendant] communicated with [plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [defendant] purposefully availed itself of the privilege of conducting business in California."). Similarly, Plaintiff's alleged contact with the Moving Defendants in New York is insufficient to establish personal jurisdiction. *See Lamont v. Pilkington*, No. 17-CV-5942-JSC, 2018 WL 2176100, at *4 (N.D. Cal. Apr. 23, 2018) ("All of the conduct alleged here occurred in New York. There is no allegation that the Defendants directed their activities toward California … Plaintiff describes his injuries as a result of Defendants' conduct at length, but he fails to demonstrate that the Defendants conducted any activities in this forum."); *Walden*, 571 U.S. at 285, 291 ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

1    with the forum state, the second element has not been satisfied. *Pestmaster Franchise Network,*

2    *Inc.*, 2017 WL 1956927, at *3.

3         Plaintiff does not identify any activity that the Moving Defendants conducted in or toward

4    California that was the but-for cause of Plaintiff's alleged harms. Ariel began conducting business

5    with Plaintiff in 2016. ¶ 29. Plaintiff first met most of the Moving Defendants at Jacob's wedding

6    on December 10, 2017 (she has never met or interacted with Roy or Tova). *See* Exs. B-I. By that

7    time, Ariel and Plaintiff had already developed a business relationship together. *See* Defs' Am.

8    Answer to Compl. [ECF No. 37], at p. 11. Thus, Plaintiff cannot connect her claims to any forum-

9    related activity by Plaintiff and, in turn, cannot establish specific personal jurisdiction. *See, e.g.,*

10   *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-cv-02539-HSG, 2019 WL 1048252, at *5-6 (N.D.

11   Cal. Mar. 5, 2019) ("Court finds that the operative complaint has not adequately alleged forum-

12   related activities that relate to the claims in this action.").

13        Additionally, Plaintiff has never met or interacted with Roy or Tova. Accordingly, Plaintiff

14   does not (and cannot) allege specific facts that would connect her conclusory allegations to any

15   California activity by Roy or Tova.

16        Although Abraham and Rachel did travel to California, those trips were in 2019 (three (3)

17   years after Ariel and Plaintiff began their business relationship and months after they stopped

18   transacting in the watch business), and both trips focused on Ariel's and Plaintiff's blockchain

19   business. *See* Exs. B, C. These attenuated visits to California—relating to an entirely different

20   matter and occurring **after** Ariel and Plaintiff had already stopped transacting in their watch

21   business together—cannot be the but-for cause for Plaintiff's harms. *See Picot*, 780 F.3d at 1213

22   ("[W]e hold that the oral agreement and [Defendant's] two trips to California did not create

23   sufficient minimum contacts to subject him to personal jurisdiction there.").

24        Similarly, Eliana's trip with her children to Plaintiff's home did not involve any business.

25   Ex. G, ¶ 6. Regardless, the trip was in April 2018, two (2) years after the business relationship

26   between Ariel and Plaintiff had already begun. Thus, that trip was not a but-for cause of Plaintiff's

27   alleged harm. *See id.*

28

Finally, the jurisdictional allegations for RealTime NY LLC do not show that the claims arise from forum-related activities. Plaintiff alleges that "Ariel Abittan had used RealTime NY LLC, believed to be an entity he created and controls, in transactions, sending and receiving funds using via bank account in its name to defraud Chen." ¶ 49. Even if those transactions were related to California, there are no allegations identifying liability or damage arising from those specific transactions in California. *See Pestmaster Franchise Network, Inc.*, 2017 WL1956927 at *3 ("The second prong demands that the claim arise out of the defendant's forum-related activities.").

**C.    The exercise of jurisdiction over the Moving Defendants in California would be unreasonable[6]**

"Jurisdiction may be exercised reasonably if under the totality of the circumstances the defendant could reasonably anticipate being called upon to present a defense in a distant forum." *Monster Energy Co. v. Metro Giant, Inc.*, No. EDCV202616JGBSHKX, 2021 WL 3524125, at *6 (C.D. Cal. Apr. 9, 2021) (quoting *Fed. Deposit Ins. Corp. v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987)). The Ninth Circuit has identified seven relevant factors in determining the reasonableness of asserting jurisdiction over a nonresident defendant: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Lin v. Solta Med., Inc.,* No. 21-CV-05062-PJH, 2022 WL 2222987, at *4 (N.D. Cal. June 21, 2022) (quoting *CollegeSource*, 653 F.3d at 1079).

"[T]he smaller the element of purposeful interjection the less is jurisdiction to be anticipated and the less reasonable is its exercise." *LeGarie v. Nurse*, No. 21-CV-04739-JCS, 2021 WL

---

[6] Because Plaintiff cannot establish the first two prongs of the personal jurisdiction analysis, the Court need not consider the "reasonableness" prong. *Hudson-munoz, LLC v. U.S. Waffle Co., Inc*., No. 2:19-cv-01960-ODW (RAO), 2019 WL 3548919, at *4 (C.D. Cal. Aug. 5, 2019) ("As Plaintiff has not made a prima facie showing of the first two prongs of specific jurisdiction, the Court does not reach the issue of reasonableness."). Nonetheless, the exercise of personal jurisdiction over the Moving Defendants would be unreasonable.

1   5771144, at *9 (N.D. Cal. Dec. 6, 2021) (quoting *Ins. Co. of N. Am. v. Cruz*, 649 F.2d 1266, 1271

2   (9th Cir. 1981)). "Although sovereignty interests may carry significant weight when jurisdiction is

3   asserted over a defendant from a foreign country, the importance of this factor with respect to state

4   sovereignty is minimal." *United Fabrics Int'l v. Metro 22*, No. CV 14-6969 MRW, 2015 WL

5   12670376, at *5 (C.D. Cal. Mar. 6, 2015) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*,

6   805 F.2d 834, 841 (9th Cir. 1986)). Additionally, "the plaintiff's convenience is not of paramount

7   importance." *Komaiko v. Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *10

8   (N.D. Cal. Apr. 20, 2020) (quoting *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1116 (9th Cir.

9   2002)). Finally, "[p]laintiffs bear the burden of proving the unavailability of an alternative forum."

10   *Id.* (quoting *Freestream Aircraft (Bermuda) Ltd.*, 905 F.3d at 609).

11        Under those factors, it is not reasonable to drag any of the Moving Defendants into

12   California litigation. No Moving Defendant has personally interjected himself or herself into

13   California. It would be a burden for them to defend this case in California. They have rarely traveled

14   to California. *See* Exs. B ¶ 10, C ¶ 9, G ¶ 6.  Exs. D ¶ 4, E ¶ 4, F ¶ 4, H ¶ 4, I ¶ 4.

15        Although the Court *may* have some interest in determining causes of actions asserted by a

16   California resident, there has been no purposefully directed activity at California, and most of

17   Plaintiff's contact with the Moving Defendants occurred in New York (if at all). Finally, the most

18   efficient judicial resolution of this matter would not occur in California, as eight (8) of the named

19   Defendants reside in Lawrence, New York. ¶ 8–13, 16.

20        Thus, the balance of these factors demonstrates that the exercise of jurisdiction in California

21   would not be reasonable for the Moving Defendants. Judgment on the pleadings should be granted,

22   and the claims against the Moving Defendants should be dismissed.

23   **III.    THE JURISDICTIONAL DEFICIENCIES CANNOT BE CURED**

24        "Dismissal with prejudice and without leave to amend is appropriate when any amendment

25   would be futile." *Atkinson v. Meta Platforms, Inc.*, No. 20-17489, 2021 WL 5447022, at *3 (9th

26   Cir. Nov. 22, 2021); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (holding "[f]utility of

27   amendment can, by itself, justify the denial of a motion for leave to amend."); *Jibreel v. Hock Seng*

28   *Chin*, No. C 13-03470 LB, 2014 WL 12600278, at *3 (N.D. Cal. Apr. 17, 2014), *report and*

1   *recommendation adopted*, No. 13-CV-03470-JST, 2014 WL 12617420 (N.D. Cal. May 5, 2014)

2   (citing *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)) ("Dismissal

3   of a complaint without leave to amend should be granted only where the jurisdictional defect cannot

4   be cured by amendment."); *Krantz*, 2022 WL 2102111, at *6 (denying leave to amend and granting

5   motion to dismiss with prejudice for lack of personal jurisdiction, when plaintiff relies on "'single

6   entity' and 'joint employer' theories" of personal jurisdiction, and when "[p]laintiff simply relies

7   on conclusory allegations, and fails to present evidence that contradicts the declarations filed by

8   [d]efendant…").

9        The Complaint's jurisdictional deficiencies are incurable. Given the sworn testimony

10   presented by the Moving Defendants, there is no good faith amendment that would establish

11   minimum contacts between the Moving Defendants and California. Simply put, those contacts

12   never existed. Thus, Defendants' Motion should be granted with prejudice.

13   **CONCLUSION**

14        For the reasons stated above, Defendants respectfully request that the Court grant judgment

15   on the pleadings and dismiss, with prejudice, the claims against the Moving Defendants.

16

17   Dated: March 24, 2023         Respectfully Submitted,

18                  */s/ Constantine P. Economides*
     Constantine P. Economides (*pro hac vice*)

19   Brianna K. Pierce (CBN 336906)
     FREEDMAN NORMAND

20   FRIEDLAND LLP
     1 SE Third Avenue, Suite 250

21   Miami, Florida 33131
     Tel: (305) 971-5943

22   Email: ceconomides@fnf.law
            bpierce@fnf.law

23   *Counsel for Defendants*

24

25

26

27

28