1  James Cai (SBN: 200189)
   *jcai@sacattorneys.com*
2  Brian A. Barnhorst (SBN: 130292)
   *bbarnhorst@sacattorneys.com*
3  Patrick E. O'Shaughnessy (SBN: 218051)
   *poshaughnessy@sacattorneys.com*
4  Woody Wu (SBN: 309317)
   *wwu@sacattorneys.com*
5  SAC ATTORNEYS LLP
   1754 Technology Drive, Suite 122
6  San Jose, CA  95110
   Telephone: (408) 436-0789
7
   Jingjing Ye (Admitted *Pro Hac Vice*)
8  *jye@yefirm.com*
   YE & ASSOCIATES, PLLC
9  3400 N. Central Expy, #500
   Plano, TX 75080
10 Telephone: (469) 410-5232

11 *Attorneys for Temujin Labs Inc. (Delaware)*
   *Temujin Labs Inc. (Cayman Islands), Lily Chao,*
12 *and Damien Ding, and (motion for withdrawal*
   *pending) Plaintiff Yuting Chen*

13

## UNITED STATES DISTRICT COURT

14

## NORTHERN DISTRICT OF CALIFORNIA

15

## SAN JOSE DIVISION

16

17

18
   YUTING CHEN,                                   Case No. 21-CV-09393-NC
19
                            Plaintiff,            **MS. YUTING CHEN AND COUNSEL**
20                                                **SAC ATTORNEYS LLP'S OPPOSITION**
                                                  **TO DEFENDANT'S MOTION FOR**
21        v.                                      **FEES AND COSTS**

22 ARIEL ABITTAN et al.,                          Judge:   Hon. Nathanael Cousins

23                            Defendants.          Date:    May 31, 2023

24                                                 Time:    11:00 a.m.

25                                                 Place:   Courtroom 5

26

27

28

1

2

## <u>TABLE OF CONTENTS</u>

I.      **INTRODUCTION**................................................................................. 6

II.     **FACTS** ............................................................................................... 10

    **A.**     *SAC's limited and less than six (6) month diligent involvement in Ms. Chen's case* ................................................................................................. 10

        1.      SAC's active and brief involvement in this case ...................................... 10

        2.      Following up on "identity" and other initial disclosures ......................... 11

        3.      Fights about depositions, and subsequent depositions............................. 12

        4.      Client management and withdrawal.......................................................... 12

        5.      Opposition to this Motion for fees and costs ........................................... 13

    B.      *Ms. Yuting Chen brought her case in good faith and dismissed it not because of an improper purpose but instead because it is too costly for her to litigate* ........ 13

        1.      Ms. Chen brought her case in good faith based on the facts she knew..... 13

        2.      Ms. Chen withdrew from this case because it was too costly................... 13

        3.      Defendant's statements about Ms. Chen demonstrate that his characterizations are speculative, far-fetched, and inaccurate................. 14

    **C.**     *Defendant's Motion is premised on numerous far-fetched characterizations, speculation, and material factual inaccuracies* ................................................ 14

        *1.*     Victory or defeat in contested motion practice does not *per se* give rise to an award of fees or costs ...................................................................... 14

        *2.*     Speculation about another's intent does not make it true ......................... 15

        3.      Defendant's Motion contains material factual inaccuracies ..................... 16

III.    **DEFENDANT'S EXTRAORDINARY FEE AND COST REQUESTS ARE NOT CLEARLY AND CONVINCINGLY SUPPORTED BY SUFFICIENT FACTS TO ESTABLISH SUBJECTIVE BAD FAITH, OR MEET ANY OTHER ARGUABLY RELEVANT STANDARD TO AWARD FEES OR COSTS**...................................... 17

    A.      *"Bad faith" is a high legal standard, as is "clear and convincing evidence." Inherent authority fee or cost awards against litigants, and especially opposing counsel, should be rare and are not warranted here* ............................................. 17

    B.      *Defendant has not raised the prospect of a Court Order violation because there was none.* ............................................................................................. 18

    C.      *There is not clear and convincing evidence of subjective bad faith, nor a Court Order that has been violated*.................................................................. 20

    D.      *The cases Defendant cites are inapposite* ............................................... 20

E.   *28 U.S.C. § 1927 provides no basis for Defendant's fee and cost request because it too requires that Defendant provide notice and an opportunity to be heard and demonstrate evidence about bad intent that does not exist* .................................. 22

F.   *Rule 54 does not provide an adequate basis for Defendant's cost request because Defendant's numerical calculations stem from the entire litigation, including the Motion, rather than just specifically alleged subjective bad faith* ....................... 23

G.   *The amount of fees and costs Defendant claims is unreasonable* ........................ 23

IV.   **CONCLUSION.** ........................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*AF Holdings LLC v. Nacasca*, 2013 WL 3815677 (N.D. Cal. July 22, 2013)....................  21

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Hldgs., Inc.*, 2016 WL 7212308
(N.D. Cal. Dec. 13, 2016)....……………………………………………………… 22

*Cortinas v. Vazquez et al.*, 2022 WL 1023795 (E.D. Cal. Apr. 5, 2022)……………………... 19

*DNA Sports Perf. Lab, Inc. v. Major League Baseball*, 2020 WL 6290374
(N.D. Cal. Oct. 27, 2020)…….………………………………………………..21 – 22

*Elasticsearch, Inc. v. Floragunn GMBH*, 2022 WL 214468
(N.D. Cal. Jan. 18, 2022)……………………………………………………...17 – 18 & 20

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 1871107
(N.D. Cal. Feb. 9, 2023)……………………………………………….... 9, 17, 20 – 21, & 23

*Gbarabe v. Chevron Corp.*, 2016 WL 4154848 (N.D. Cal. Aug. 5, 2016)………………... 18 – 19

*Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015)………………….. 22

*Krause v. Krause*, 2023 WL 2541912 (E.D. Cal. Mar. 16, 2023)………………………………… 22

*Nguyen v. Wells Fargo, N.A.*, 2022 WL 17738734 (N.D. Cal. Dec. 16, 2022)…………………21

*Phillips v. P.F. Chang's China Bistro, Inc.*, 2016 WL 3136925 (N.D. Cal. June 6, 2016)…….. 21

*Unigard Security Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363
(9th Cir. 1992)……………………………………………………………………19 – 20

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626 (9th Cir. 1987)…........ 22

**Rules**

Fed. R. Civ. Pro. 26, 37, & 54…………………………………………………...  *passim*

28 U.S.C. § 1927……………………………………………………………7 & 22

**Treatise**

Hon. Karen L. Stevenson & James E. Fitzgerald, Federal Civil Procedure Before Trial,
California & 9th Cir. Ed (2023)…………………………………………………… 9 – 10 & 19

1

2

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

3

4

1.      Has Defendant met his burden to demonstrate clear and convincing evidence of subjective bad faith or a Court Order violation?

5

6

2.      Do inaccurate "factual" recitations, far-fetched characterizations, and mere speculation about intent constitute sufficient evidence to justify Defendant's requests?

7

8

3.      Are Defendant's fee and cost requests supported by the record in this case?

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MS. YUTING CHEN AND SAC ATTORNEYS LLP'S OPPOSITION TO
DEFENDANT'S MOTION FOR FEES AND COSTS

## **MEMORANDUM IN OPPOSITION**

## I.     INTRODUCTION.

> "*[T]his case is **not** one of mistaken identity*." Mr. Abittan "spent thousands of hours working alongside" Ms. Lily Chao, "[with h]undreds of these hours … face-to-face [and] with numerous witnesses present…. For the avoidance of doubt, the following is a picture" of Ms. Lily Chao.
>
> -     Counsel for Ariel Abittan in Santa Clara Superior Court Case No. 20CV372622 (Cross-Complaint, filed Nov. 3, 2021, ¶¶ 129 & 134) (emphasis on "not" in the original and otherwise added)[1]

Mr. Abittan was not mistaken. He knows Ms. Lily Chao. He also knows Plaintiff Yuting Chen. *See* Motion at 5:14 – 16; *see also* Declaration of Yuting Chen in Support of Opposition to the Motion ("Chen Decl.") ¶ 2 (describing how he "cheated" her in her watch business and damaged her financially through his conduct with Temujin, in which she had invested).

Further, current and former counsel for Ms. Chao and Ms. Chen have repeatedly emphasized these distinctions to Defendant: "[Abittan] knows Lily Chao and Yuting Chen are two separate individuals." Motion at 5:14 – 15; *see also* Cai Decl. ¶ 2. Ms. Chao and Ms. Chen even emphasized their separate identities when they sued Mr. Abittan and others in separate cases.[2]

Defendant, through his Motion for Sanctions, Fees, and Costs (the "Motion"), pursues factual inaccuracies, speculation, and far-fetched characterizations to extreme ends: an award of

---

[1]     Declaration of James Cai in Support of Opposition to the Motion ("Cai Decl.") Ex. A.

[2]     This is *not* a case of Ms. Lily Chao and Ms. Selena Yuting Chen using different "secret aliases" or "fake IDs." Neither has any known "identity" issue with the U.S. or California governments, or any other government. Cai Decl. ¶ 4. Only their opposing parties in business and litigation, specifically including Defendant Ariel Abittan, have pursued such extreme allegations. *See* Cai Decl. ¶ 3.

Further, the word "alias" in this context is misleading because its connotations assume inaccurate conclusions about Ms. Yuting Chen's intent. The word "nickname," instead, does not prematurely rule on this issue and connote that Ms. Selena Yuting Chen and others intended to conceal their identities by use of nicknames, *see* Dictionary.com definitions of "alias" and "nickname," which is common for individuals whose names do not translate well into Romanized characters. *See* Chen Decl. ¶ 11.

costs and/or fees against everyone available, jointly and severally, whether they received notice and an opportunity to be heard, or not, and whether they have even been involved in the conduct in question, or not. And the requests are based primarily on the premise that these individuals and entities simply disagreed with Defendant Abittan. But the federal rules and precedent do not permit what Defendant seeks. Instead, the rules upon which Defendant bases his request require those who petition under them do far more to achieve such extreme results.

Defendant has not shown subjective bad faith by clear and convincing evidence to support an award under this Court's inherent authority. He has not shown a sufficient Court Order violation to support a Rule 37 award. And he has not shown anything close to "reckless," "bad faith" "harassment" to support a 28 U.S.C. § 1927, or any other, award.

Moreover, the idea that mere disagreement, particularly by counsel representing a party on projects different than those that allegedly constitute subjective bad faith, could lead to sanctions undermines access to courts. It undermines the fundamental principle that parties may be represented by counsel before courts, without those counsel fearing sanctions for articulating reasonable disagreement on behalf of their clients.

For example, Defendant argues that disagreeing with him on a motion about whether his counsel should have been disqualified merits sanctions. *See, e.g.*, Motion at 18:7 – 9 & 19:20 – 28. But Defendant selected counsel who have faced similar motions throughout the country. *See* Cai Decl. Ex. B at 6:7 – 10 & n.3 (Judge Kulkarni's November 21, 2022 Order on the motion to disqualify). And Defendant misstated Judge Kulkarni assessment of that motion. Motion at 19:20 – 28 (inaccurately calling the disqualification motion "unmeritorious"). Judge Kulkarni credited Plaintiffs' arguments rather than dismissing them outright, writing:

> "there certainly is a basis to conclude that Mr. Roche … misus[ed] the litigation process [to benefit] an entity in whose performance he had a large financial interest…. [Yet,] the Court is inclined to conclude that the Temujin Parties have not met their burden to show that the remaining members of the Freedman Firm breached an ethical duty…. [T]o confirm the Court's understanding, the Court will require the following actions….

Cai Decl. Ex. B at 12:4 – 9 & 13:2 – 5 (setting conditions). Defendant's law firm escaped disqualification because its founder left the firm and because it complied with Judge Kulkarni's conditions to permit its continued involvement. To suggest that Plaintiffs' Motion to disqualify was, therefore, reckless, frivolous, or done with subjective bad faith is far-fetched.[3]

And in another, often-cited example, Defendant continues to demonstrate confusion at best about Ms. Lily Chao and Ms. Selena Yuting Chen's names. Defendant quotes the following September 2023 Case Management Statement comment from his opponents in three separate instances in his Motion:

> Lily Chao … and Yuting Chen … are two separate individuals…. [T]he watch business *involved* Chen, whereas the crypto business *involved* Chao.

Motion at 5:13 – 16, 13:2 – 4, and 15:1 – 8 (quoting Doc. No. 57 at 6 – 7 (emphasis added)). But "involved" does not mean "involved only," or one to the exclusion of the other.

Nevertheless, despite correctly identifying in his Motion information supporting the conclusion that Ms. Chao and Ms. Chen were each involved, in part, in *both* businesses,[4] Defendant stretches the facts without support and claims ***without citation*** that Plaintiffs said: "Lily Chao worked in the blockchain business *only*, whereas Yuting Chen worked on the watch business *only*." Motion at 12:7 – 8 (emphasis added).

Defendant's "gotcha" attempt falls flat because the allegedly inconsistent text he quotes is instead completely consistent with the information he cites to rebut it. Defendant's inference of "only" in this instance is a creation of his own speculation. Indeed, Defendant goes as far as to suggest that this Plaintiff "inconsistency" (a/k/a/ his inability to distinguish between the word "involved" and phrase "involved only") "confirms the falsity of the critical assertion that 'the

---

[3]    Defendant also argues in his Motion that disagreeing with him on an undecided Motion for Judgement on the Pleadings merits sanctions. *See* Motion at 15:19 – 16:15. But that Motion was far from overwhelming, and a response to an earlier version of it highlights its weaknesses. *See* Doc. No. 79 (referencing, among other things, weaknesses in arguments that this Court lacks personal jurisdiction over the Defendant despite the years in which Defendant litigated this case before the Court).

[4]    *See, e.g.,* Motion at 5:16 & 3:15 – 16 (Ms. Chao in crypto business) and 3:15 – 16 (Ms. Chao in watch business); *see also, e.g.,* Motion at 15:3 – 8 (Ms. Chen in crypto business) and Motion at 5:15 – 16 (Ms. Chen in watch business).

watch business involved Chen, whereas the crypto business involved Chao.'" Motion at 15:2 – 3. But it confirms no such thing.

Defendant even supports his Motion's claims of "bad faith" on this mistake. Motion at 14:16 – 17 (wrongfully calling this mistaken inconsistency a "false representation to the Court"); *compare also* Motion at 5:13 – 16, 13:2 – 4, and 15:1 – 8 *with* Motion at 12:7 – 8.

Even more critically, the very case law on which he relies in his Motion emphasizes that a request like Defendant's requires "notice and an opportunity to be heard." *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 2023 WL 1871107 at *20 (N.D. Cal. Feb. 9, 2023). But Defendant conspicuously failed to provide notice to all of the attorneys who fall within the scope of his request, many of which are not even subject to many of the sanctions springing from the alleged bad faith because they did not participate in it. *See, e.g.,* Fed. R. Civ. Pro. 26(g) and Hon. Karen L. Stevenson & James E. Fitzgerald, Federal Civil Procedure Before Trial, California & 9th Cir. Ed. ("Stevenson & Fitzgerald"), Ch. 11 § V.A.4; *see also* Doc. No. 104-1 Ex. A (email notification to some but not all subject to the request) and Doc. No. 104-1 ¶¶ 2 – 5 (expressing frustration at Defendant's insufficient attempt to provide notice and an opportunity to be heard).

Defendant seeks six-figure joint and several sanctions against all current and former counsel for Ms. Chen without regard for their involvement in the activities in question or their knowledge of relevant facts to defend themselves. Asking this court to sanction someone without notice, opportunity to be heard, or the facts to defend themselves, based on contradictory statements, far-fetched characterizations, and mere speculation is at least as sanctionable and the conduct Defendant calls into question.

Finally, and most importantly, the conduct on which Defendant's Motion largely focuses does not involve SAC or its current or former employees. *See* Motion at 11:9 – 16 (SAC is arguably implicated by only the third batch of evidence). SAC has been involved in this case for *less than six (6) months* and moved to withdraw in just *four and a half (4.5) months*. And it acted diligently throughout that entire period. Rule 26 violations, in particular, do not apply to attorneys, parties, or law firms that do not sign the filing in question. *See* Stevenson & Fitzgerald, Ch. 11 § V.A.4 (suggesting sanctions springing from Rule 26, if any, are often no

more than self-executing evidence exclusion, *e.g.*, one cannot use witnesses at trial that they do not adequately disclose).

Ms. Yuting Chen and SAC respectfully request that the Court deny Defendant's inadequately supported Motion. His extraordinary fee and cost requests are not clearly and convincingly supported by sufficient facts to establish subjective bad faith, or meet any other arguably relevant standard to award fees or costs.

## II.    FACTS

### A.    *SAC's limited and less than six (6) month diligent involvement in Ms. Chen's case*

#### 1.    SAC's active and brief involvement in this case

Ms. Chen retained SAC in this case on December 15, 2022. SAC's subsequent actions over the following months of its involvement include *promptly*:

- analyzing the long record in this case and the credibility of significantly conflicting allegations;
- supplementing Ms. Chen's Rule 26 disclosures in January, February, March (twice), and April (twice) of 2023 as SAC learned more information;
- negotiating and then subsequently scheduling Ms. Chen's deposition in February 2023, on more reasonable terms than Defendants proposed, including with an interpreter;
- negotiating, preparing for, and participating in the April 2023 depositions of Ms. Chao and Mr. Ding;
- opposing Defendant's first motion for judgment on the pleadings, based on personal jurisdiction;
- preparing to oppose Defendant's second motion for judgment on the pleadings, based on personal jurisdiction;
- identifying and resolving a challenge with its continued representation of Ms. Chen and moving to withdraw in early May 2023;
- managing the client relationship and litigation; and

- managing busy continued litigation in related cases.

Cai Decl. ¶ 8. Further, in this instance, SAC is much more actively involved in other, arguably related, cases. *Id.* ¶ 9. For example, it has been engaged by Temujin Labs Inc. (Delaware), Temujin Labs Inc. (Cayman Islands), Ms. Chao, and Mr. Ding. *Id.* ¶ 10. And it has done more work for them in other cases than it has for Ms. Chen in this case. *Id.* It has been pressing forward in all of these cases. To suggest that SAC dragged its feet or was not diligent in any case is far-fetched and contradicted by the record. *Id.* ¶ 11.

### 2. Following up on "identity" and other initial disclosures

Defendant makes much of his "identity" questions as basis for his Motion. He spent approximately 75% of the "Relevant Facts" section in this Motion on this question alone. *Compare* Motion at 3:4 – 5:7 (115) *with id.* at 5:7 – 6:18 (38 lines). But why he did so when the facts so plainly contradict his assumed conclusions is an open question.

In a case management statement Defendant submitted approximately three (3) weeks after the 2022 holiday season, Defendant stated he may need more information from Plaintiff on Rule 26 disclosures in Case No. 5:21-cv-09340 (the "Abittan Case") and "may need to file a motion to compel." Doc. No. 66 at 10:28 – 11:2 (making no reference to such a motion in this case, No. 5:21-cv-09393 (the "Chen Case")); *see also* Doc. No. 66 at 11:21 – 22. And Defendant did not make a formal motion to compel under Rule 37 in the Chen Case. *See* Docket Nos. 66 – 104; *see also* Cai Decl. Ex. C (Chen Case docket as of May 25, 2023).

Instead, Defendant submitted a brief informal letter seeking the information in response to a Court Order. Doc. No. 68. It differs from a formal motion under Rule 37. *Id.* The informal letter resulted in the following from the Court: "Request to compel supplemental initial disclosure … denied in part as explained at hearing. 1) *As to witnesses, no further disclosure required*." Doc. No. 70 (Feb. 8, 2023) (emphasis added).

Allegedly, this information is just not good enough for Defendant Abittan, who may just be trying to paint a false picture of Plaintiff and others involved in related litigation based on

speculative suggestion rather than evidence. Defendant has persisted with his "confused identity" tactic nevertheless and continued to raise his identity questions as a wedge.

SAC and Plaintiff responded promptly and repeatedly in good faith to numerous questions about "identities," even though there has not been a credible issue about Ms. Lily Chao's and Ms. Yuting Chen's identities. They made five (5) supplemental disclosures within just the next three (3) months *after* the Court stated that no further identity disclosure was required. *Compare* Doc. No. 70 (Feb. 8, 2023) with Motion at 16:27 – 17:1.

Defendant makes other claims about alleged deficiencies in initial disclosures about damages, but in his own recent case management statement claimed damages only, in the commonly utilized: "amount to be proven at trial." Santa Clara Superior Court Case No. 20CV372672 at 1:17 (filed May 22, 2023).

3.      Fights about depositions, and subsequent depositions

In addition to the extensive fights about "identities" in this series of lawsuits, there have been extensive fights about depositions, and subsequent depositions. Defendant's deposition questions across the cases have contained overlapping topics. In a related case he deposed Ms. Lily Chao extensively, including about Ms. Chen. He also has deposed Mr. Ding and is preparing to take the person most qualified deposition of Temujin. All of this follows contentious negotiations about those depositions, including motion practice in some instances; and this is just over the past six (6) months of SAC's active involvement. Further, there has been extensive motion in practice in many of the related cases.

4.      Client management and withdrawal

Throughout, SAC has worked to manage its multiple clients in the series of lawsuits related to this case and their relationships with others in them, including opposing counsel. This has been a large task in these cases, in particular because Defendant has contested so many basic

facts, and presented so many inaccurate facts of his own, that these cases have called for a more careful evaluation of the factual record than most.

Further, SAC recently moved to withdraw from the above-captioned case for reasons highlighted by Ms. Chen's attached declaration. (And SAC has had to address additional far-fetched speculation from Defendant about these reasons.) Attorneys have professional obligations to uphold in this context, which SAC has upheld diligently rather than acting haphazardly and with the haste Defendant has urged.

5.       Opposition to this Motion for fees and costs

Well after SAC's motion to withdraw, Defendant filed this lengthy and unsupported motion for sanctions. *See, e.g.,* 104-1 Ex. A (highlighting the length of Defendant's submission). This Opposition itself reflects its diligent representation of Ms. Chen, and SAC's adherence to its professional obligations, as well as the volume of work it has completed in its limited and diligent time working on this lawsuit.

B.       *Ms. Yuting Chen brought her case in good faith and dismissed it not because of an improper purpose but instead because it is too costly for her to litigate*

1.       Ms. Chen brought her case in good faith based on the facts she knew

Defendant speculates that Ms. Chen filed her lawsuit improperly. *See, e.g.*, Motion at 2:2 – 3. But Ms. Chen filed her allegations in good faith and based on the facts as she understood them. *See* Complaint; *see also* Chen Decl. ¶ 10. Moreover, contrary to Defendant's assertions, both Ms. Chen's complaint and her attached Declaration contradict the allegedly unrebutted declarations on which he relies. *Compare id.* with Motion at 18:27 – 19:8 (highlighting merely that a complaint and answer in this litigation do not share the same point of view).

2.       Ms. Chen withdrew from this case because it was too costly

Further, Defendant speculates that Ms. Chen withdrew from this case "strategically." Motion at 2:24 & 20:6 – 7. But he offers no evidence of her subjective intent or strategy, only

speculation. Further, Ms. Chen has declared otherwise. *See* Chen Decl. She withdrew from this case because it was too costly to litigate the case. Chen Decl. ¶¶ 2 – 9. Her withdrawal from the case gives no credence to Defendant's speculative characterizations. Nor should any withdrawal in any case give rise to similar allegations.

3.       Defendant's statements about Ms. Chen demonstrate that his characterizations are speculative, far-fetched, and inaccurate

What Defendant's statements about Ms. Chen's subjective intent demonstrate are his speculative and far-fetched attempts to create unsupported "facts" from which he can make arguments. Yet even if they were true, they would not give rise to credibly clear and convincing inferences of subjective bad faith, and they do not reflect a Court Order violation. There is no basis from Defendant's statements to award fees or costs against Ms. Chen.

**C.**     *Defendant's Motion is premised on numerous far-fetched characterizations, speculation, and material factual inaccuracies*

*1.*       Victory or defeat in contested motion practice does not *per se* give rise to an award of fees or costs

Defendant raises contested motions in which he alleges he prevailed to help support his Motion. But he did not prevail in full in those motions, and one of the motions is substantially similar to many others filed against Defendant's counsel for largely the same conduct.

Defendant argues that disagreeing with him on a motion about whether his counsel should be disqualified merits sanctions. Motion at 19:20 – 28. But the many other similar motions filed against Defendant's counsel suggests they are not all without merit. *See, e.g.,* Cai Decl. Ex. B at 6:7 – 10 & n.3 (summary from Judge Kulkarni). And Defendant misstated Judge Kulkarni assessment of the disqualification motion. Motion at 19:20 – 28. Judge Kulkarni credited Plaintiffs' arguments rather than dismissed them outright. Cai Decl. Ex. B at 12:4 – 9 & 13:2 – 5 (setting conditions).

Defendant's law firm's continued involvement was based in significant part on the fact that its lead name partner left the firm and the conditions set by Judge Kulkarni. *See id.* To

suggest that Plaintiffs' Motion to disqualify was reckless, frivolous, or done with subjective bad faith such as to warrant sanctions is far-fetched.

Defendant also argues in his Motion that disagreeing with him on an undecided motion for judgement on the pleadings merits sanctions. *See* Motion at 15:19 – 16:15. But the response to an earlier version of the motion highlights its weaknesses. *See* Doc. No. 79.

Contested motion practice does not *pe se* give rise to sanctions. To suggest otherwise, particularly through use of these examples, is unreasonable and demonstrates that many "facts" allegedly in support of Defendant's motion are just far-fetched characterizations.

## 2.    Speculation about another's intent does not make it true

Defendant repeatedly attempts to speculate about the motives of others. But these attempts are sheer speculation. Defendant's speculation does not make it true or create "facts" from which he can justify his sanctions request.

Defendant speculates about Ms. Yuting Chen's intent in choosing a nickname, calling it an "alias." *See* Dictionary.com definition of "alias" (referencing intent to conceal). The use of "nickname," instead, does not prematurely rule on the issue of intent, or connote that Ms. Yuting Chen intended to conceal her identity by use of a nickname. *See* Dictionary.com definitions of "nickname" (making no reference to an intent to conceal). Nicknames are common for individuals whose names do not translate well into Romanized characters. *See* Chen Decl. ¶ 11.

Defendant speculates about Ms. Chen's and Ms. Chao's claims about their business activities. He quotes the following September 2023 Case Management Statement comment from his opponents in three separate instances in his Motion. *See* Motion at 5:13 – 16, 13:2 – 4, and 15:1 – 8 (quoting Doc. No. 57 at 6 – 7 (emphasis added)). But he fails to recognize that, as noted above, "involved" does not mean "involved only."

Ms. Chao and Ms. Chen were each involved, in part, in both businesses. Defendant speculates without support that Plaintiffs said: "Lily Chao worked in the blockchain business *only*, whereas Yuting Chen worked on the watch business *only*." Motion at 12:7 – 8 (emphasis added) (**no citation provided**). Ms. Chao and Ms. Chen said no such thing.

Defendant speculates that a process server not finding a person at a specified address necessarily means: "counsel fear that the [person's] deposition will confirm the conspiratorial, fraudulent conduct alleged by Abittan." Motion at 21:13 – 15 (***no citation provided,*** nor could there be any citation because the speculative claim is inaccurate).

These examples reflect sheer speculation about intent rather than credible evidence.

3.    Defendant's Motion contains material factual inaccuracies

Defendant claims that this case has revolved around a "web of lies" about "identities." Motion at 2:10 – 12. But he also wrote that "this case is **not** one of mistaken identity." Cai Decl. Ex. A ¶ 129 (emphasis in original).

Defendant claims that "Counsel never corrected the record" about Ms. Chao's and Ms. Chen's identities. Motion at 2:17. But both former and current counsel stated otherwise. *See* Motion at 5:13 – 16; Cai Decl. ¶ 2. Indeed, Plaintiff's counsel corrections to the record included emphasizing that Defendant had "'conflat[ed] the two women as one.'" Motion at 4 (referencing Doc. No. 29 at 4).

What Defendant has in hand now are documents reflecting official Chinese character, Pinyin, U.S., and California government names as well as nicknames, photographic and video evidence, and in-person interactions to boot. *See, e.g.,* Santa Clara Superior Court Case No. 21CV375422 at 1:11 – 13 (Case Management Statement, filed May 22, 2023); Cai Decl. Ex. A ¶¶ 129 & 134; Motion at 6:12 – 13 (referencing videotaped depositions). And he still claims he does not know enough. *See* Motion.

Defendant's Motion contains several factual inaccuracies, and they are material. He bases his request for sanctions on them. While sanctions are not warranted even on Defendant's inaccurate facts, far-fetched characterizations, and speculation, that his recitation of "what happened" is so materially different than what really happened is itself grounds to deny Defendant's Motion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    DEFENDANT'S EXTRAORDINARY FEE AND COST REQUESTS ARE NOT CLEARLY AND CONVINCINGLY SUPPORTED BY SUFFICIENT FACTS TO ESTABLISH SUBJECTIVE BAD FAITH, OR MEET ANY OTHER ARGUABLY RELEVANT STANDARD TO AWARD FEES OR COSTS

*A.    "Bad faith" is a high legal standard, as is "clear and convincing evidence." Inherent authority fee or cost awards against litigants, and especially opposing counsel, should be rare and are not warranted here*

Courts acting under their inherent authority to sanction, as opposed to applying a rule or statute, must find either: (1) a willful Court Order violation; or (2) bad faith. *Elasticsearch, Inc. v. Floragunn GMBH*, 2022 WL 214468 at *6 (N.D. Cal. Jan. 18, 2022) (quoting *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021)). They look when assessing whether to award fees and costs "'for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980))." But this "'bad faith requirement sets a high threshold.'" *Id.* at 7 (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)).

Courts in the Ninth Circuit must "'make an *explicit finding* that the sanctioned party's conduct 'constituted or was tantamount to bad faith'" when awarding fees or costs on this basis. *Id.* (emphasis in original) (internal citations omitted). And "'[i]t is the moving party's burden to demonstrate that the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose.'" *Id.* (quoting *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015)." Defendant recognizes that "a court's inherent powers must be exercised with 'restraint and discretion,'" and that Courts look in this context for proof of "bad faith by clear and convincing evidence." *Facebook*, 2023 WL 1871107 at *20; *see also* Motion at 9:1 – 2; *id.* at 24 – 27. But he falls far short of providing the Court with sufficient evidence to support any award in this instance.

In *Elasticsearch*, the movant sought issue sanctions under the Court's inherent authority "based on [the] alleged failure to produce [a witness] for deposition"; alleged misrepresentations and "deception" regarding the witnesses' unavailability; and its "surreptitious termination" of the witness while the sanctions dispute was pending. 2022 WL 214468 (N.D. Cal. Jan. 18, 2022) at *1 & *7.

The respondent emphasized that it had not "willfully violated a Court order or otherwise acted in bad faith." *Id.* at *1. Yet the Court had "ordered [the respondent] to submit a declaration describing [the] circumstances" surrounding the substantial delay and the witness' unavailability. *Id.* at *4 - *5. The respondent submitted the sworn declaration. *Id.* at *5.

And although the respondent terminated the witness' employment on the day the movant filed its sanctions motion, after maintaining his employment on leave for 15 months, *id.* at *5 (causing additional delay), the Court held that the record before it "does not support a finding of bad faith." *Id.* at *7. It held the movant "has not met [its] burden." *Id.* While the movant presented lengthy evidence related to the Court's Orders and the alleged deception, the Court held that the movant "has not made the requisite showing that [the respondent] acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at *8 (quoting *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021)).

In this instance, like in *Elasticsearch*, the movant claimed delay and deception. *Id.* at *1 & *7. But in *Elasticsearch*, unlike here, the Court issued an Order, and the respondent submitted a sworn declaration. *Id.* at *4 & *5. And there, the Court found insufficient evidence to support a finding of subjective bad faith intent. *Id.* at *7 – *8. Here there is far less evidence of subjective intent. And here sanctions are far less warranted.

Moreover, in *Elasticsearch*, the movant could not even get issue sanctions. *Id.* at *1, *7, & 8. And here the Defendant has moved for joint and several, six-figure monetary sanctions, including against attorneys he did not adequately notify nor provide with an opportunity to be heard. Just like the respondent in *Elasticsearch* was not sanctioned, no respondent should be sanctioned here either.

> **B.** **Defendant has not raised the prospect of a Court Order violation because there was none**

Similarly, the evidence here simply does not support a Court Order violation. There was none. And, without one, the awards Defendant requests are not available under the law. *See Gbarabe v. Chevron Corp.*, 2016 WL 4154848 (N.D. Cal. Aug. 5, 2016). *Gbarabe* was a case

about an oil rig that exploded and spilled its contents into the surrounding waters, causing significant contamination and harm. *Id.* at 1. In the subsequent litigation, the movant prepared for and commenced an on-site examination with its expert, but had to abort the trip after incurring more than $200,000 in costs. *Id.* at 3.

The respondents had provided assurances about the expert visit. *Id.* And the movant's on-site expert team went as far as travelling on a 19-hour boat ride to the oil rig in question. *Id.* But they were left by its occupants to idle in water for a day, rather than to return to the harbor at night, "which raised the potential for assault by sea pirates, a risk the ship's captain refused to take." *Id.* Although the movant kept defense counsel fully appraised throughout, it had not made a formal request under Rule 34. *Id.* By the time the defendant's U.S. counsel learned and could successfully intervene, the movant's on-site expert team had left for home. *Id.* The movants sought Rule 37 sanctions. *Id.*

The defendants emphasized in response that "*Rule 37 does not apply because the … trip was not scheduled pursuant to a specific court order.*" Id. (emphasis added). "*The court agree[d].*" *Id.* (citing *Unigard Security Ins. Co. v. Lakewood Engineering Mfrg. Corp.* 982 F.2d 363 (9th Cir. 1992) (emphasis added). Because "there [wa]s no court order that [the defendants] disobeyed," "Rule 37 sanctions [we]re unavailable for this conduct." *Id.* at 4.

In this instance, like in *Gbarabe*, the law simply does not permit the movant's request for fees and costs under Rule 37. Indeed, the very request is itself "improper." Stevenson & Fitzgerald, Ch. § 11 V.B.1 (motion to compel without formal motion and Court Order "improper."); *accord Cortinas v. Vazquez et al.*, 2022 WL 1023795 at *3 (N.D. Cal. Apr. 5, 2022).

Absent a prior formal request and Court Order compelling the production, fee and cost awards are not available under Rule 37. Stevenson & Fitzgerald, Ch. 11 § V.B.1; *see also id.* Ch. 11 § V.C.1 and *Unigard*, 982 F.2d at 367 – 368 (referencing Rule 37's "requirement that there be some form of court order that has been disobeyed" and noting that "Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse…. Similarly, we have limited

application of Rule 37(d) to its literal scope." (Internal citations omitted.)). Defendant's request is improper on its face.

C.     *There is not clear and convincing evidence of subjective bad faith, nor a Court Order that has been violated*

Defendant submits no direct evidence of Plaintiff's subjective intent, bad faith or otherwise. He instead assumes bad faith and suggests that this Court should draw unreasonable inferences from his assumptions and his inaccurate factual recitations, speculation, and mischaracterizations. Moreover, the Motion asks the Court to take an extraordinary action.

Defendant has the burden to meet the "high standards" here, "clearly and convincingly," and he has not come close. *Elasticsearch*, 2022 WL 214468 at *7; *Facebook*, 2023 WL 1871107 at *20. Even if the Court believed each side equally and had to draw the most plausible inferences, Plaintiff's factual recitation is easily the most plausible. She and her counsel consistently have emphasized that there has been no question of whether Ms. Yuting Chen and Ms. Lily Chao are two people. Instead, the ambiguity here stemmed from communication differences and the question of what American nicknames Ms. Chen and Ms. Chao have used because their Chinese Pinyin and character names do not translate easily into English. To turn to allegations of "aliases" and "webs of lies" about "identity" without more went too far. And to turn this into a sanctions motion calls into question Defendant's reasonableness and credibility.

D.     *The cases Defendant cites are inapposite*

Defendant's Motion cites primarily to out-of-jurisdiction cases. And those on which it relies to support sanctions are otherwise distinguishable too. For example, in the *Facebook* case, which awarded fees and costs, unlike here: the Court awarded fees and costs against "Facebook and Gibson Dunn for the worst of their consistently bad behavior…. [F]or example, [they took] the plaintiffs' concession that they did not need administrative emails—emails requesting information from apps or discussing scheduling—because they were only looking to discover the 'underlying facts,'" and "used [it] to argue that the plaintiffs had conceded that they were not

entitled to discover *any* communications about the [relevant] Investigation at all. [And] Facebook and Gibson Dunn did not make this argument once; they made it repeatedly." *Facebook*, 2023 WL 1871107 at *22.

As the Court noted, "[a]ny first-year civil procedure student would know that internal communications between Facebook employees about the investigation would be a prime source of information relevant to this lawsuit. It's equally obvious that Facebook's communications with its outside consultants hired to investigate these apps would be relevant. Indeed, Special Master Garrie found that a 'substantial number' of the communications he reviewed were 'relevant to the case and not protected by privilege.'" "[N]o reasonable person could argue that these documents—given their significant probative value—were too burdensome to identify and produce as a categorical matter." *Id.* at *22

Further, the *Facebook* parties "ha[d] already reached a settlement in principle," such that the Court only needed to adjust "the settlement[, *i.e.*, the] total amount to be paid by Facebook into a settlement fund." *Id.* at *20. "Any fee award to the plaintiffs from this sanctions motion [would just] cause a corresponding reduction in the amount of money designated to pay attorney's fees from the settlement fund." *Id.*

The facts here are different. The conduct in question in *Facebook* was egregious. And the money requested here would come not out of the pockets of the world's richest companies and law firms, but instead could come out of the pockets of far less affluent individuals. Defendant's request is callous.

The other in-jurisdiction cases Defendant cites are no more helpful. They all involve either tangentially related arguments or conduct more culpable than any alleged here. *See Nguyen v. Wells Fargo, N.A.*, 2022 WL 17738734 at *2 & *4 (N.D. Cal. Dec. 16, 2022) (seeking sanctions due to, among other things, "Ms. Nguyen forg[ing] an attorney's signature on her brief in opposition to [a] motion," that "[t]he Court denie[d]" in part before awarding "$1,620" in fees); *Phillips v. P.F. Chang's China Bistro, Inc.*, 2016 WL 3136925 at *3 (N.D. Cal. June 6, 2016) (relating merely to "prevailing party"); *AF Holdings LLC v. Nacasca*, 2013 WL 3815677 at *1 – 5 (N.D. Cal. July 22, 2013) (same); *DNA Sports Performance Lab, Inc. v. Major League*

*Baseball*, 2020 WL 6290374 at *5 (N.D. Cal. Oct. 27, 2020) ("sixth suit arising out of the same original circumstances"; plaintiff refused to dismiss any of the lawsuits); *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015) (pointing 28 U.S.C. § 1927 sanctions at the individual attorneys who sign "improper" filings); and *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 7212308 at *1 (N.D. Cal. Dec. 13, 2016) (cited to support possible supplemental briefing, if any, of the amount of fees and costs).

      E.      *28 U.S.C. § 1927 provides no basis for Defendant's fee and cost request because it too requires that Defendant provide notice and an opportunity to be heard and demonstrate evidence about bad intent that does not exist*

Defendant's citation to 28 U.S.C. § 1927 provides no easier path to fees and costs in this instance. The rule requires notice and an opportunity to be heard, like others. *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 638 (9th Cir. 1987). And Defendant did not provide sufficient notice or a sufficient opportunity to be heard.

This rule also requires that Defendant demonstrate "subjective bad faith," like others. Motion at 10:6. Defendant may argue that 28 U.S.C § 1927 differs in that "reckless" disregard for obligations to the Court may suffice. But even Defendant's cited caselaw on this point recognizes that the "recklessness" must have been done "'with the purpose of *harassing* an opponent.'" *See Krause v. Krause*, 2023 WL 2541912 at *26 (E.D. Cal. Mar. 16, 2023) (emphasis added); *see also* Motion at 10:7 – 8. And Defendant's arguments about harassment center on the substance of Plaintiff's complaint, which she supported when she filed, and again recently supported in her Declaration in support of this Opposition brief. Chen Decl. ¶ 10 ("[T]he factual information in filings in this lawsuit have been provide by me based on the real situation.").

Defendant's claims of "harassment" effectively argue that disagreement about the facts of a case that remained contested through the end necessarily support sanctions. That claim is so far-fetched as to be antithetical to the litigation process. Defendant's argument here would have any contested complaint be subject to sanctions because the defendant disagreed, when in reality

nearly all federal civil complaints are contested by the defendants, and none are subject to sanctions as a result of the mere disagreement.

      **F.**     *Rule 54 does not provide an adequate basis for Defendant's cost request because Defendant's numerical calculations stem from the entire litigation, including the Motion, rather than just specifically alleged subjective bad faith*

      "[T]he amount of compensatory sanctions is limited to fees and costs 'incurred solely because of the misconduct' at issue, meaning 'fees that party would not have incurred but for the bad faith.'" *Facebook*, 2023 WL 1871107 at *21 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017)). Yet Defendant asks for fees and costs here from not just the alleged bad faith but also "the **entirety** of Defendants' legal fees and expenses, all of which arose from the bad faith filing and maintenance of this lawsuit." Motion at 22:18 – 20 (emphasis in original) (referencing all "Defendants," plural, rather than just the moving Defendant).

      This remarkable request, plainly contradicted by a case Defendant cites in the same Motion, highlights the "improper" nature of Defendant's Motion. Defendant seeks fees and costs for every step taken in the lawsuit, whether it was taken in response to alleged bad faith or not. And he seeks fees and costs for work done on behalf of non-movants.

      **G.**     *The amount of fees and costs Defendant claims is unreasonable*

      Consequently, the amount of fees and costs Defendant claims is unreasonable and not supported by the law or the evidence. Further, Defendant provided inadequate proof of those fees and costs and, in particular, seeks fee amounts based on rates that are not supported by the legal work Defendants' counsel have completed in this case.

**IV.**    **CONCLUSION.**

      For the foregoing reasons, Ms. Yuting Chen and SAC respectfully request that the Court: (A) find

1.       Defendant has not met his burden to demonstrate clear and convincing evidence of subjective bad faith or a Court Order violation;

2.       inaccurate "factual" recitations, far-fetched characterizations, and mere speculation about intent, like what Defendant presented in his Motion, do not constitute sufficient evidence to justify Defendant's requests; and

3.       Defendant's fee and cost requests are not supported by the record in this case;

and, consequently, (B) deny Defendant's Motion in its entirety.


Dated:  May 26, 2023                SAC ATTORNEYS LLP


                                       By:  _/s/Patrick O'Shaughnessy_
                                       James Cai, Esq.
                                       Brian A. Barnhorst, Esq.
                                       Patrick E. O'Shaughnessy, Esq.
                                       Woody Wu, Esq.